Richard A. Hearn (ISB No. 5574)
Bruce A. Larson (ISB No. 2093)
HEARN & WOOD LLP
P.O.B. 70
155 2nd Avenue
Pocatello, ID 83204
Telephone (208) 497-0405
Fax (208) 932-4380
rick@hwlawpro.com
jjb@hwlawpro.com


*Attorneys for the Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUZETTE BAKER, CAMILLE ADAMS, DONJUA MOSELEY and JENALI GRAHAM, <br><br> Plaintiffs, <br><br> vs. <br><br> TEMP R. PATTERSON, M.D., and TEMP R. PATTERSON, M.D., P.A., <br><br> Defendants. | Case No.: _____ <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

### **INTRODUCTION**

1.    Plaintiffs Suzette Baker ("Baker"), Camille Adams (Adams), Donjua Moseley

("Moseley"), and Jenali Graham ('Graham") (collectively "Plaintiffs") have brought Federal

Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against their former

physician, Defendant Temp R. Patterson, M.D. ("Patterson") and his corporate business entity,

Defendant Temp R. Patterson, P.A. (Patterson P.A.), alleging that Defendants Patterson and

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

Patterson P.A. committed a pattern of racketeering acts consisting of two or more predicate acts of fraud /or mail/wire fraud in violation of 18 U.S.C. §§ 1341, 1343.

2.      More specifically, Plaintiffs allege that Defendants Patterson and Patterson P.A. imported Chinese manufactured products into the United States that Defendants knew were non-FDA approved counterfeit products and, when selling these non-FDA approved counterfeit products to Plaintiffs and others, Defendants misrepresented these non-FDA approved counterfeit products as being FDA approved Botox[1] and/or breast implants.

3.      In addition to claims brought under the federal RICO and mail/wire fraud statutes, Plaintiffs have brought State law claims against Defendants for fraud in violation of Idaho Code § 18-7803, breach of fiduciary duty, consumer protection in violation of Idaho Code § 48-603, medical malpractice, and intentional battery.

## JURISDICTION

4.      Federal subject matter jurisdiction for the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims brought by Plaintiffs Baker, Adams, Moseley and Graham (collectively "Plaintiffs") is based on 18 U.S.C.A. § 1964(c).

5.      Supplemental federal subject matter jurisdiction for all Plaintiffs' State law claims (Consumer Protection, Fraud, and Medical Malpractice) is based upon 28 U.S.C.A. § 1367(a).

## PARTIES

6.      At all times relevant, Plaintiff Suzette Baker ("Baker") lived in Hazelton, Idaho. On or about April 29, 2014, Defendant Patterson performed bilateral breast augmentation on Plaintiff

---

[1] Botox is the brand name of the pharmaceutical product Botulinum toxin type a, made by Allergan, Inc., an American company.

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

Baker using what he represented to her as being "mammary gel silicone implants, 360 cc each."
Defendant Patterson also injected Plaintiff Baker with a substance he represented as being Botox
in June of 2015

7.      At all times relevant, Plaintiff Camille Adams ("Adams") lived in Albion, Idaho. On
or about April 25, 2014, Defendant Patterson performed bilateral breast augmentation on
Plaintiff Adams using what he represented to her as being "mammary gel silicone implants, 420
cc each."

8.      At all times relevant, Plaintiff Donjua Moseley ("Moseley") lived at 2200 Macs
Avenue, Heyburn, Idaho. She worked for Defendants Patterson and Patterson P.A. from
November, 2012 until November of 2015. Defendant Patterson last injected Plaintiff Moseley
with a substance he represented as being Botox in late summer of 2015.

9.      At all times relevant, Plaintiff Jenali Graham ("Graham") lived at 923 J Street, Rupert,
Idaho. Defendant Patterson performed bilateral breast augmentation on Plaintiff Graham using
what he represented to her as being "mammary gel silicone breast implant, 360 cc each."

10.     At all times relevant, Defendant Temp T. Patterson, M.D. ("Defendant Patterson") was
and currently still is an Idaho licensed physician with his medical practice located at 1338 Hiland
Ave., Suite C in Burley, Idaho. At least since 2010, Defendant Patterson offered both surgical
and non-surgical cosmetic services in addition to ENT (Ear Nose and Throat) medicine and
surgery in the Burley area.

11.     Defendant Temp T. Patterson, M.D., P.A. (also d/b/a Magic Valley Laser Cosmetics)
is an Idaho professional corporation having an address of 1338 Hiland Ave., Suite C, Burley,
Idaho, 83318. Temp T. Patterson, M.D. is listed as its President and Lacy Patterson is listed as its
Secretary on the Annual Reports filed with the Idaho Secretary of State in 2013, 2014 and 2015.

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

## FACTUAL ALLEGATIONS

12.     Plaintiffs reallege all previous paragraphs as if set forth fully herein.

13.     Defendant Patterson practiced medicine in Idaho through his incorporated professional association, Defendant Patterson, P.A., under the assumed business name of Magic Valley Laser Cosmetics.

14.     Defendant Patterson and Defendant Patterson, P.A. marketed Defendants cosmetic services business under the assumed business name of Magic Valley Laser Cosmetics.

15.     Magic Valley Laser Cosmetics was located at 1338 Hiland Ave., Suite C in Burley, Idaho.

16.     From their offices located at 1338 Hiland Ave., Suite C in Burley, Idaho, Defendants knowingly devised and participated in a scheme to defraud whereby Defendants would purchase over the internet, import into the U.S. and then sell to customers in Idaho Chinese manufactured non-FDA approved silicone breast implants and counterfeit non-FDA approved Botox with counterfeit Allergan labels. Pictures of the boxes containing the Chinese breast implants and the counterfeit Botox with counterfeit labels are attached as **Exhibit A** to this Complaint.

17.     As part of their scheme to defraud, Defendants used false or fraudulent pretenses, representations and promises to conceal the fact that the medication and/or products being sold to Plaintiffs was non-FDA approved medication and/or products Defendants had imported into Idaho.

18.     When purchasing the medication and products from outside the U.S., marketing the medication and products in the U.S. and in selling the medication and products to customers in Idaho, Defendants used the mails or interstate wire facilities to carry out their scheme.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

19.     Because Defendant Patterson was acting as a physician when he sold the non-FDA approved medication and products he had imported to his patients, including Plaintiffs, Defendant Patterson was in a fiduciary relationship with Plaintiffs and his other patients at the time of their purchases.

20.     On or about April 29, 2014, Defendant Patterson performed bilateral breast augmentation on Plaintiff Baker using what he represented in her medical records as being "mammary gel silicone implants, 360 cc each."

21.     In obtaining Plaintiff Baker's consent to perform the breast augmentation, Defendant Patterson concealed from her the fact that the implants he intended to use in her breast augmentation were non-FDA approved counterfeit breast implants

22.     Defendant Patterson immediately and without consent exhibited pictures of Plaintiff Baker's breasts before and after the surgery to at least two individuals while Baker was still unconscious from anesthesia, in violation of HIPAA privacy regulations.

23.     Plaintiff Baker met with Defendant Patterson several times following the surgery to try to address concerns about the left breast implant. Rather than address the issue, Defendant Patterson's response was that Plaintiff Baker should be thankful, as her breasts were markedly improved from their "horrible" pre-surgery condition.

24.     Due to Defendant Patterson's negligence during surgery, Plaintiff Baker had a poor result leaving her with both continued ptosis of her breasts and marcromastia.

25.     Defendant Patterson's negligence during surgery and the resulting harm to Plaintiff Baker is independent of the harm caused Plaintiff Baker by Defendant Patterson's use of non-FDA approved counterfeit implants.

26.    The silicone implants actually used by Defendant Patterson when performing Plaintiff Baker's breast augmentation were Chinese manufactured non-FDA approved counterfeit breast implants.  A picture of the Chinese breast implants removed from Plaintiff Baker are attached as **Exhibit B** to this Complaint.

27.    When Plaintiff Baker discovered that Defendants had sold her non-FDA approved breast implants manufactured in China, she had them surgically removed.

28.    Plaintiff Baker has scheduled additional surgery for breast reconstruction in August 2016, necessitated by the removal of the counterfeit implants.

29.    Defendant Patterson also injected Plaintiff Baker with a substance he represented as being Botox in June of 2015.

30.    In obtaining Plaintiff Baker's consent to inject her with what he represented would be Botox, Defendant Patterson concealed the fact that the substance he would be injecting would be Chinese manufactured non-FDA approved counterfeit Botox.

31.    On or about April 25, 2014, Defendant Patterson performed bilateral breast augmentation on Plaintiff Adams using what he represented to her as being "mammary gel silicone implants, 420 cc each."

32.    Based upon information and belief, Plaintiff Adams alleges that Defendant Patterson negligently performed her breast surgery and this negligence is independent of Defendant Patterson's negligence in using non-FDA approved counterfeit implants.

33.    In obtaining Plaintiff Adam's consent to perform the breast augmentation, Defendant Patterson concealed from her the fact that the implants he intended to use in her breast augmentation were non-FDA approved counterfeit breast implants.

34.    The silicone implants actually used by Defendant Patterson when performing Plaintiff Adam's breast augmentation were Chinese manufactured non-FDA approved counterfeit breast implants.

35.    When Plaintiff Adams discovered that Defendants had sold her non-FDA approved breast implants manufactured in China, she made an appointment with another doctor to have them removed.

36.    Defendant Patterson injected Plaintiff Moseley with a substance he represented as being Botox in late summer of 2015.

37.    The substance injected into Plaintiff Moseley by Defendant Patterson in late summer of 2015 was a Chinese manufactured non-FDA approved counterfeit Botox.

38.    In obtaining Plaintiff Moseley's consent to inject her with what he represented would be Botox, Defendant Patterson concealed the fact that the substance he would be injecting would be Chinese manufactured non-FDA approved counterfeit Botox.

39.    On or about April 25, 2015, Defendant Patterson performed bilateral breast augmentation on Plaintiff Graham using what he represented to her as being "mammary gel silicone breast implant, 360 cc each."

40.    In obtaining Plaintiff Graham's consent to perform the breast augmentation, Defendant Patterson concealed from her the fact that the implants he intended to use in her breast augmentation were non-FDA approved counterfeit breast implants.  The photograph of Graham holding the implant is attached as **Exhibit C** to the Complaint.

41.    The silicone implants actually used by Defendant Patterson when performing Plaintiff Graham's breast augmentation were Chinese manufactured non-FDA approved counterfeit breast implants.

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

42.    Due to Defendant Patterson's negligence during surgery, Plaintiff Graham had a poor result leaving her with bilateral mal-positioned breast implants, with double bubble syndrome and breast tissue fall out/ptosis.

43.    Defendant Patterson's negligence during surgery and the resulting harm to Plaintiff Graham is independent of the harm caused Plaintiff Graham by Defendant Patterson's use of non-FDA approved counterfeit implants.

44.    Because the Chinese silicone breast implants and counterfeit Botox was manufactured outside the U.S. and imported and sold by Defendants in Idaho, neither the breast implants nor the counterfeit Botox used by Defendants to treat Plaintiffs was ever tested by the FDA to assure that they meet the high quality and safety standards of FDA approved silicone breast implants and Botox.

45.    While Plaintiff Moseley worked for Defendants, Defendant paid Plaintiff Moseley a referral fee to market his cosmetic services to her relatives and other acquaintances in the area.

46.    When Plaintiff Moseley discovered that Defendants were selling non-FDA approved medication and products, she stopped referring people to Defendants for cosmetic services.

47.    When Defendant Patterson then asked Plaintiff Moseley to order an FDA-approved Mentor[2] breast implant of a certain size so it could be photographed and added to the medical records of a patient (C.S.) who had non-FDA approved Chinese implants, Plaintiff Moseley not only refused, but, she resigned.

48.    Patient C.S. still does not know that her implants are non-FDA approved implants manufactured in China. As of the date of the filing of this Complaint, on information and belief, there are numerous other women in the Burley area who are unaware that Defendant Patterson

_____
[2] Mentor is a surgical aesthetic product supplied by Mentor Worldwide LLC, an American company.

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

injected them with non-FDA approved Botox and/or implanted in them non-FDA approved breast implants which Defendants had imported from China.

49.     Defendants use of non-FDA approved medication and products without the knowledge of their patients and customers was both willful and wanton and an extreme deviation from reasonable standard of care for physicians and professional associations in Idaho.

## COUNT I
### (Federal RICO)

50.     Plaintiffs reallege all previous paragraphs as if set forth fully herein.

51.     As set forth in detail below, Defendants Patterson and Patterson, P.A., are hereby alleged to be "persons" associated with an "enterprise" "engaged in, or the activities of which affect, interstate or foreign commerce, [who] conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity" as defined in 18 U.S.C.A. § 1961.

52.     In addition to Defendants, the "enterprise" also includes the foreign manufacturers and distributors of the non-FDA approved foreign manufactured counterfeit Botox and breast implants that the Defendants imported into the United States and sold to Plaintiffs and others in Idaho.

53.     Defendants involved themselves in the enterprise's affairs "through a pattern of racketeering activities" as defined under 18 U.S.C.A.§ 1961(1)(B) (trafficking in goods bearing counterfeit marks, mail and wire fraud).

54.     Defendants committed racketeering activities by committing two or more predicate acts of mail or wire fraud.

COMPLAINT AND DEMAND FOR JURY TRIAL - 9

55.     Over a period of time extending back at least to 2011, Defendants engaged in a continuous pattern of racketeering acts consisting of the importation and selling of non-FDA approved Botox and/or breast implants.

56.     Defendants are believed to have sold non-FDA approved Botox and/or breast implants to more than 50 individuals including Plaintiffs.

57.     Defendants' purpose at all times was to profit from the sale of these non-FDA approved products to Plaintiffs and others.

58.     Defendants committed their racketeering acts by intentionally deceiving Plaintiffs and others as to whether the Botox and/or breast implants Defendants were selling were FDA approved.

59.     Defendants only ended their cosmetic practice after learning of this lawsuit by posting an "Important Announcement" attached as **Exhibit D** on the Web Page for Magic Valley Laser Cosmetics.

60.     Defendants violated 18 U.S.C.A. § 1962(a) when they used or invested funds derived from their pattern of racketeering activities in the operation of the enterprise as defined above.

61.     Defendants violated 18 U.S.C.A. § 1962(b) when they used or invested funds derived from their pattern of racketeering activities to acquire or maintain an interest or control in the enterprise as defined above.

62.     Defendants violated 18 U.S.C.A. § 1962(c) when they conducted or participated in the conduct of the enterprise's activities through a pattern of racketeering activities.

63.     Defendants provided Plaintiffs with less expensive non-FDA approved foreign manufactured counterfeit Botox and/or breast implants instead of the more expensive FDA approved Botox and/or breast implants that Defendants had promoted and marketed.

COMPLAINT AND DEMAND FOR JURY TRIAL - 10

64.    Defendants used the mail and telephone or other interstate wire and internet facilities to purchase, market and sell the non-FDA approved foreign manufactured counterfeit Botox and/or breast implants as FDA approved Botox and/or breast implants to Plaintiffs and others.

65.    Defendants deliberately concealed from Plaintiffs and others that the Botox and breast implants they were promoting, marketing and selling were non-FDA approved foreign manufactured counterfeit Botox and/or breast implants.

66.    Internet postings for Defendants doing business as Magic Valley Laser Cosmetics are attached as **Exhibit E** to this Complaint.

67.    Defendants had a duty to inform Plaintiffs and others that the Botox and breast implants being promoted, marketed and sold by Defendants were non-FDA approved foreign manufactured counterfeit Botox and/or breast implants.

68.    Defendants fraudulently misrepresented the Botox and breast implants being sold were bona fide FDA approved products.

69.    Defendants' material fraudulent misrepresentations and omissions about the Botox and breast implants were made by Defendants with the intent of deceiving Plaintiffs and others for the purpose of inducing Plaintiffs and others to act upon them.

70.    In obtaining consent for Plaintiff Baker's breast augmentation in April of 2015, Defendant Patterson misrepresented to her that the implants she was purchasing were FDA approved Mentor manufactured implants.

71.    In obtaining consent for Plaintiff Baker's Botox injections in June of 2015, Defendant Patterson misrepresented to her that the Botox she was purchasing was FDA approved Allergan manufactured Botox.

COMPLAINT AND DEMAND FOR JURY TRIAL - 11

72.     In obtaining consent for Plaintiff Adam's breast augmentation in April of 2015, Defendant Patterson misrepresented to her that the implants she was purchasing were FDA approved Mentor manufactured implants.

73.     In obtaining consent for Plaintiff Moseley's Botox injections in summer of 2015, Defendant Patterson misrepresented to her that the Botox she was purchasing was FDA approved Allergan manufactured Botox.

74.     In obtaining consent for Plaintiff Graham's breast augmentation in April of 2015, Defendant Patterson misrepresented to her that the implants she was purchasing were FDA approved Mentor manufactured implants.

75.     The counterfeit Allergan labels are shown in **Exhibit A** of the Complaint.

76.     Plaintiffs Baker, Adams, Moseley and Graham all justifiably relied upon Defendants' representations concerning the Botox and breast implants they were purchasing.

77.     Plaintiffs and others justifiably relied upon Defendants' misrepresentations and/or omissions concerning the quality of the Botox and/or breast implants they purchased from Defendants.

78.     Plaintiffs Baker, Adams, Moseley and Graham all suffered pecuniary loss as a result of Defendants' fraudulent conduct.

79.     Plaintiffs Baker, Adams, Moseley and Graham suffered pecuniary losses when they paid Defendants for non-FDA approved foreign manufactured Botox and/or breast implants.

80.     Plaintiffs Baker and Adams also suffered pecuniary losses when they paid other doctors to surgically remove the non-FDA approved foreign manufactured breast implants Defendants had sold them.

81.    Plaintiffs Baker, Adams, Moseley and Graham will all suffer additional pecuniary losses in the future when they undergo medical monitoring of their health to detect and hopefully treat any health consequences of the non-FDA approved foreign manufactured Botox and breast implants.

## COUNT II
### (State Fraud)

82.    Plaintiffs reallege all previous paragraphs as if set forth fully herein.

83.    Plaintiffs allege that Defendants committed the torts of actual and constructive fraud when Defendants deliberately concealed from them that Defendants were selling them non-FDA approved foreign manufactured Botox and breast implants.

84.    In reliance upon Defendants misrepresentations or purposeful omissions, Plaintiffs allowed Defendant Patterson to inject non-FDA approved Botox and/or implant non-FDA approved breast implants into their bodies.

85.    Defendants misrepresented that the Botox and breast implants were FDA approved when Defendants intentionally concealed from Plaintiffs the material fact that the Botox and breast implants they were being provided were non-FDA approved.

86.    The Botox and breast implants Plaintiffs were being provided was in fact not FDA approved.

87.    Whether the Botox and breast implants were FDA approved was material.

88.    Defendants knew that the Botox and breast implants Plaintiffs were being provided were in fact not FDA approved.

89.    Defendants intended for Plaintiffs to rely upon the false representations about the Botox and breast implants.

COMPLAINT AND DEMAND FOR JURY TRIAL - 13

90.    Plaintiffs were unaware that the Botox and breast implants were non-FDA approved.

91.    Plaintiffs relied upon their belief that the Botox and breast implants were FDA approved.

92.    Plaintiffs' reliance on Defendants' representations about the Botox and breast implants was justifiable.

93.    Plaintiffs suffered economic, mental and physical injury as a result of Defendants' intentional misrepresentations.

94.    Defendants conduct was an extreme deviation from reasonable standards of care for doctors and medical practices in Idaho and was done by Defendants in a willful and wanton manner.

<u>COUNT III</u>
**(State Breach of Fiduciary Duty)**

95.    Plaintiffs reallege all previous paragraphs as if set forth fully herein.

96.    A fiduciary duty attached to each Plaintiff at the time Defendants undertook treatment of them.

97.    The fiduciary relationship between the parties granted Plaintiffs Baker, Adams, Mosely and Graham the right to rely on the Defendants' knowledge and skill.

98.    Plaintiffs placed their trust in Defendants, rightfully assuming that Defendants placed the interests and well-being of each of them above their own interests.

99.    Defendants breached their fiduciary duty by placing their interests above the Plaintiffs' interests by surgically inserting or injecting counterfeit non-FDA approved medical devices into each of the them, all the while leading them to believe such devices were genuine FDA approved.

COMPLAINT AND DEMAND FOR JURY TRIAL - 14

100.    Defendants had a duty to provide Plaintiffs Baker, Adams, Moseley and Graham with undivided loyalty and protection against third-party interference with physician-patient relationship.

101.    Defendants breached that duty by colluding with a company to obtain counterfeit items to pass off as genuine FDA approved medical devices for the enrichment of both Defendants and the company.

102.    Defendants were bound by a fiduciary duty to disclose all information regarding the treatment to be provided to the Plaintiffs.

103.    Defendants breached that duty by concealing information that counterfeit items were being inserted/injected into Plaintiffs without their knowledge, rather than FDA approved items.

104.    Defendants were bound by a fiduciary duty to provide a level of care that met the accepted standards of doctors and medical practices in Idaho.

105.    Defendants failed to provide such care by intentional acts of surgically inserting and/or injecting counterfeit items into Plaintiffs without their knowledge.

106.    Defendants, prior to treating Plaintiffs, embarked upon a scheme to obtain counterfeit non-FDA approved breast implants and Botox, with the intent to pass them off as genuine FDA-approved items.

107.    By this scheme, Defendants placed their own economic interests above the health and safety of prospective patients, and Plaintiffs specifically in this case.

108.    These prior actions are retroactively subject to the strict scrutiny of the fiduciary standard.

## COUNT IV
### (Idaho Consumer Protection Act)

109.   Plaintiffs reallege all previous paragraphs as if set forth fully herein.

110.   Plaintiffs Baker, Adams, Moseley and Graham purchased both goods and services from Defendants Patterson and Patterson, P.A.

111.    Plaintiff Baker purchased the following goods from Defendants: Breast implants.

112.    Plaintiff Baker purchased the following services from Defendant Patterson: Botox injections and breast augmentation surgery

113.    Plaintiff Adams purchased the following goods from Defendants: Breast implants.

114.   Plaintiff Adams purchased the following services from Defendant Patterson: Breast augmentation surgery.

115.   Plaintiff Moseley purchased the following goods from Defendants: Botox.

116.   Plaintiff Moseley purchased the following services from Defendant Patterson: Botox injections.

117.   Plaintiff Graham purchased the following goods from Defendants: Breast implants.

118.   Plaintiff Graham purchased the following services from Defendant Patterson: Breast augmentation surgery.

119.   In selling goods and services to Plaintiffs Baker, Adams, Moseley and Graham, Defendants Patterson and Patterson, P.A., acted unlawfully in violation of Idaho Code § 48-603.

120.   All four Plaintiffs purchased at least one good and one service from Defendants.

121.   In failing to notify Plaintiffs that the goods being sold them by Defendants were not FDA approved, Defendants violated Idaho Code § 48-603(2) (approval of goods).

122.   In failing to notify Plaintiffs Baker and Moseley that the Botox being provided them by Defendants was not manufactured by Allergan, Defendants violated Idaho Code § 48-603(3) (association with another).

123.   In failing to notify Plaintiffs Baker, Adams and Graham that the implants being sold them by Defendants was not manufactured by Mentor or any other FDA approved manufacturer, Defendants violated Idaho Code § 48-603(3) (association with another).

124.   In failing to notify Plaintiffs that the goods (Botox and Implants) being sold them by Defendants were purchased by the Defendants from sources located outside the U.S., Defendants violated Idaho Code § 48-603(4) (deceptive representations of geographic origin in connection with goods).

125.   In failing to notify Plaintiffs that the goods being sold them by Defendants were not FDA approved, Defendants violated Idaho Code § 48-603(5) (representing that goods and services have characteristics that they do not have).

126.    In failing to notify Plaintiffs that the services being provided them by Defendant Patterson included placing non FDA approved goods into their bodies without their consent, Defendants violated Idaho Code § 48-603(5) (representing that goods and services have characteristics that they do not have).

127.   In failing to notify Plaintiffs that the goods being sold them by Defendants were not FDA approved, Defendants violated Idaho Code § 48-603(7) (representing that goods are of a particular standard, quality or grade when they are of another).

128.   In advertising the goods and services marketed to Plaintiffs by Defendants, Defendants concealed the fact that the goods and services being offered for sell were goods which were not FDA approved and services which involved using non-FDA approved goods. Such advertising by Defendants violated Idaho Code § 48-603(9) (advertising goods and services with intent not to sell them as advertised).

COMPLAINT AND DEMAND FOR JURY TRIAL - 17

129.   In obtaining informed consent to treat Plaintiffs with Botox and/or surgically implant breast implants, Defendants violated Idaho Code § 48-603(17) (deceit) by intentionally misleading and/or deceiving Plaintiffs as to the nature of what they were being asked to consent to.

130.   In injecting Plaintiffs with non-FDA approved Botox and/or in implanting into Plaintiffs non-FDA approved breast implants, Defendants violated Idaho Code § 48-603(18) (unconscionability) by employing unconscionable methods, acts or practices.

131.   Unbeknownst to his patients, Defendant Patterson used the non-FDA approved medications and products when providing services to patients other than Plaintiffs. Defendants Patterson's and Patterson P.A.'s violations of Idaho Code § 48-603 were therefore both "repeated" and "flagrant" as those terms are used in Idaho Code § 46-608(1).


## COUNT V
### (State Medical Malpractice)

132.   Plaintiffs reallege all previous paragraphs as if set forth fully herein.

### PLAINTIFF BAKER

133.   Plaintiff Baker timely filed a Prelitigation Hearing Request with the Idaho State Board of Medicine on or about December 29, 2015.  Defendant Patterson has since waived the hearing.

134.   Defendant Patterson and Plaintiff Baker, through counsel, stipulated to waive the Prelitigation Hearing previously scheduled for March 7, 2016 and, as a result, the hearing request was withdrawn.

135.   On or about April 29, 2014, Dr. Patterson performed on Plaintiff Baker a "bilateral augmentation mammoplasty, subglandular with a mammary gel silicone breast implant."

136.   In obtaining consent for the augmentation mammoplasty, Defendant Patterson deliberately concealed from Plaintiff Baker that he would be implanting non-FDA approved Chinese manufactured breast implants.

137.   Before her surgery, Dr. Patterson led Plaintiff Baker to believe that the breast implants he would implant would be FDA approved implants.

138.   After her surgery, Dr. Patterson led Plaintiff Baker to believe that the breast implants he had implanted were FDA approved implants.

139.   Because Defendant Patterson concealed this material fact about Plaintiff Baker's surgery from Plaintiff Baker, Defendant Patterson failed to obtain Plaintiff Baker's informed consent prior to surgery.

140.   In concealing from Plaintiff Baker the fact that Dr. Patterson was intending to implant non-FDA approved breast implants and, in fact, had implanted non-FDA approved implants, Dr. Patterson breached the standard of health care practice for the local area in which he practices.

141.   When Plaintiff Baker discovered that Dr. Patterson had implanted non-FDA approved breast implants into her body, she scheduled an appointment with another surgeon to have the removed.

142.   Plaintiff Baker has had her breast implants surgically removed.

143.   Plaintiff Baker received injections from Defendant Patterson of what Dr. Patterson represented as being Botox. Plaintiff Baker's most recent injections were in June of 2015.

144.   In obtaining consent for the injections, Defendant Patterson deliberately concealed from Plaintiff Baker that he would be injecting non-FDA approved Chinese manufactured counterfeit Botox.

COMPLAINT AND DEMAND FOR JURY TRIAL - 19

145. Before her injections, Dr. Patterson led Plaintiff Baker to believe that the Botox he would administer would be FDA approved Botox.

146. After her injections, Dr. Patterson led Plaintiff Baker to believe that the Botox he had injected was FDA approved Botox.

147. Because Defendant Patterson concealed this material fact about Plaintiff Baker's injections from Plaintiff Baker, Defendant Patterson failed to obtain Plaintiff Baker's informed consent prior to the injections.

148. In concealing from Plaintiff Baker the fact that Dr. Patterson was intending to inject non-FDA approved Botox and, in fact, had injected non-FDA approved Botox, Dr. Patterson breached the standard of health care practice for the local area in which he practices.

149. In addition to and independent of Dr. Patterson's breach of the standard of care in using non-FDA approved Botox and breast implants, Dr. Patterson breached the standard of care in performing Plaintiff Baker's surgery and his breach of the standard of care resulted in harm to her.

150. Defendant Patterson's breach of the local standard of health care practice proximately caused physical, emotional and economic injury to Plaintiff Baker.

**PLAINTIFF ADAMS**

151. Plaintiff Adams filed a Prelitigation Hearing Request with the Idaho State Board of Medicine on or about February 29, 2016. Defendant Patterson has since waived the hearing.

152. On or about April 25, 2014, Dr. Patterson performed on Plaintiff Adams a "bilateral augmentation mammoplasty, subglandular with a mammary gel silicone breast implant."

COMPLAINT AND DEMAND FOR JURY TRIAL - 20

153.   In obtaining consent for the augmentation mammoplasty, Defendant Patterson deliberately concealed from Plaintiff Adams that he would be implanting non-FDA approved Chinese manufactured breast implants.

154.   Before her surgery, Dr. Patterson led Plaintiff Adams to believe that the breast implants he would implant would be FDA approved implants.

155.   After her surgery, Dr. Patterson led Plaintiff Adams to believe that the breast implants he had implanted were FDA approved implants.

156.   Because Defendant Patterson concealed this material fact about Plaintiff Adam's surgery from Plaintiff Adams, Defendant Patterson failed to obtain Plaintiff Adam's informed consent prior to surgery.

157.   In concealing from Plaintiff Adams the fact that Dr. Patterson was intending to implant non-FDA approved breast implants and, in fact, had implanted non-FDA approved implants, Dr. Patterson breached the standard of health care practice for the local area in which he practices.

158.   When Plaintiff Adams discovered that Dr. Patterson had implanted non-FDA approved breast implants into her body, she scheduled an appointment with a surgeon to have them removed as soon as possible.

159.   In addition to and independent of Dr. Patterson's breach of the standard of care in using non-FDA approved Botox and breast implants, Dr. Patterson breached the standard of care in performing Plaintiff Adams' surgery and his breach of the standard of care resulted in harm to her.

160.   Defendant Patterson's breach of the local standard of health care practice proximately caused physical, emotional and economic injury to Plaintiff Adams.

COMPLAINT AND DEMAND FOR JURY TRIAL - 21

**PLAINTIFF MOSELEY**

161.   Plaintiff Moseley filed a Prelitigation Hearing Request with the Idaho State Board of Medicine on or about February 26, 2016. Defendant Patterson has since waived the hearing.

162.   Plaintiff Moseley received injections from Defendant Patterson of what Dr. Patterson represented as being Botox. Plaintiff Moseley's most recent injections were in summer of 2015.

163.   In obtaining consent for the injections, Defendant Patterson deliberately concealed from Plaintiff Moseley that he would be injecting non-FDA approved Chinese manufactured counterfeit Botox.

164.   Before her injections, Dr. Patterson led Plaintiff Moseley to believe that the Botox he would administer would be FDA approved Botox.

165.   After her injections, Dr. Patterson led Plaintiff Moseley to believe that the Botox he had injected was FDA approved Botox.

166.   Because Defendant Patterson concealed this material fact about Plaintiff Moseley's injections from Plaintiff Moseley, Defendant Patterson failed to obtain Plaintiff Moseley's informed consent prior to the injections.

167.   In concealing from Plaintiff Moseley the fact that Dr. Patterson was intending to inject non-FDA approved Botox and, in fact, had injected non-FDA approved Botox, Dr. Patterson breached the standard of health care practice for the local area in which he practices.

168.   Defendant Patterson's breach of the local standard of health care practice proximately caused physical, emotional and economic injury to Plaintiff Moseley.

**PLAINTIFF GRAHAM**

COMPLAINT AND DEMAND FOR JURY TRIAL - 22

169.   Plaintiff Graham timely filed a Prelitigation Hearing Request with the Idaho State Board of Medicine on or about March 11, 2016.  Defendant Patterson has since waived the hearing.

170.   On or about April 24, 2015, Dr. Patterson performed on Plaintiff Graham a "bilateral augmentation mammoplasty, submuscular with a mammary gel silicone breast implant."

171.   In obtaining consent for the augmentation mammoplasty, Defendant Patterson deliberately concealed from Plaintiff Graham that he would be implanting non-FDA approved Chinese manufactured breast implants.

172.   Before her surgery, Dr. Patterson led Plaintiff Graham to believe that the breast implants he would implant would be FDA approved implants.

173.   Plaintiff Graham was allowed to view sample implants at Dr. Patterson's office, and took a photograph of herself holding the size Mentor implant she intended to be implanted.  The photograph of Graham holding the implant is attached as **Exhibit C** to the Complaint.

174.   After her surgery, Dr. Patterson led Plaintiff Graham to believe that the breast implants he had implanted were FDA approved implants.

175.   Because Defendant Patterson concealed this material fact about Plaintiff Graham's surgery from Plaintiff Graham, Defendant Patterson failed to obtain Plaintiff Graham's informed consent prior to surgery.

176.   In concealing from Plaintiff Graham the fact that Dr. Patterson was intending to implant non-FDA approved breast implants and, in fact, had implanted non-FDA approved implants, Dr. Patterson breached the standard of health care practice for the local area in which he practices.

177.   In addition to and independent of Dr. Patterson's breach of the standard of care in using non-FDA approved Botox and breast implants, Dr. Patterson breached the standard of care in performing Plaintiff Graham's surgery and his breach of the standard of care resulted in harm to her.

178.   Plaintiff Graham experienced difficulties with the implant in her left breast, including pain and accompanying restriction of range of motion on her left side. In a follow-up with Dr. Patterson, he admitted that he had likely made the incision too low.  Defendant Patterson indicated that he believed it might be necessary to remove the implant and insert another, smaller implant.  Plaintiff Graham decided to wait to see if the discomfort would go away.  She was unable to resume her regular routines until approximately December 2015 due to the discomfort.

179.   Plaintiff Graham still experiences issues with both implants in that they seem to shift overnight and must be manually readjusted to appear correctly positioned.

180.   Plaintiff Graham has suffered from unexplained rashes since the surgery. Due to a history of allergic reactions to certain substances, she is fearful that the implant may be contaminated or impregnated with foreign substances that are causing the rashes.

181.   In improperly implanting one or both of the breast implants, Dr. Patterson breached the standard of health care practice for the local area in which he practices.

## COUNT VI
### (State Intentional Battery)

182.   Plaintiffs reallege all previous paragraphs as if set forth fully herein.

COMPLAINT AND DEMAND FOR JURY TRIAL - 24

183.    In obtaining consent from each Plaintiff for the augmentation mammoplasty and/or Botox injection, Defendant Patterson deliberately concealed from Plaintiffs that he would be implanting non-FDA approved Chinese manufactured breast implants or injecting non-FDA approved Botox.

184.    Before each surgery or procedure, Defendant Patterson led Plaintiffs to believe that the breast implants and/or Botox injections were FDA approved.

185.    By concealing the true nature of the breast implants and Botox, Defendant Patterson did not obtain true consent to the procedures performed on the Plaintiffs.

186.    Defendant Patterson knew that his deception nullified any consent given by the Plaintiffs and that his touching was therefore not permitted.

187.    Defendant Patterson's touching of the Plaintiffs without permission was unlawful, harmful and offensive.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:


A.    Appropriate damages for the injuries and losses suffered by Plaintiffs in accordance with the proof presented at trial;

B.    For special damages incurred by Plaintiffs, together with their costs and reasonable attorney fees, in accordance with the provisions of Idaho Code §§12-120, 12-121, 18-7805, 48-608 and IRCP 54; and §18 USC 1964(c),

C.     For such other and future relief as the Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues.


COMPLAINT AND DEMAND FOR JURY TRIAL - 25

DATED this 29th day of April, 2016

By:  /s/ Richard A. Hearn
      RICHARD A. HEARN
      HEARN & WOOD LLP

**EXHIBIT A**

印刷前请仔细

BOTOX (completed the optimal)
of main component as highly purified
botulinum toxin type A, is a kind of
nerve conduction blocking agents, for
the treatment of excessive active
muscles. As a beauty materials, mainly
for the except knit and thin face.
As long as little dose of botox
accurately is injected into specific
facial muscles, can make the dynamic
wrinkles disappear.

**Botulinum Toxin Type A**
**BoTOX®**

 
 

LOT 5G30703925
2015.03
2018.02
CE 0459 REF 94140JR

~ ALLERGAN
4451DJR10B

  

**100** Purified
Neurotoxin
**UNITS** Complex

BOTOX (completed the optimal)
of main component as highly purified
botulinum toxin type A, is a kind of
nerve conduction blocking agents, for
the treatment of excessive active
muscles. As a beauty materials, mainly
for the except knit and thin face.
As long as little dose of botox
accurately is injected into specific
facial muscles, can make the dynamic
wrinkles disappear.

BOTOX (completed the optimal)
of main component as highly purified
botulinum toxin type A, is a kind of
nerve conduction blocking agents, for
the treatment of excessive active
muscles. As a beauty materials, mainly
for the except knit and thin face.
As long as little dose of botox
accurately is injected into specific
facial muscles, can make the dynamic
wrinkles disappear.

**Botulinum Toxin Type A**
**BoTOX®**

 
 

LOT 5G30703925
2015.03
2018.02
CE 0459 REF 94140JR

~ ALLERGAN
4451DJR10B

  

**100** Purified
Neurotoxin
**UNITS** Complex

BOTOX (completed the optim
of main component as highly purifi
botulinum toxin type A, is a kind
nerve conduction blocking agents.
the treatment of excessive acti
muscles. As a beauty materials-main
for the except knit and thin fac
As long as little dose of bot
accurately is injected into specif
facial muscles, can make the dynam
wrinkles disappear.









EXHIBIT

B



EXHIBIT

C

_____



What I'll have

You, 03/03/2015, 5:49 PM



# MAGIC VALLEY LASER COSMETICS

LASER AND COSMETIC SURGERY

EXHIBIT

D

_____

# DISCOVER THE MAGIC OF A YOUNGER YOU



MAGIC VALLEY LASER COSMETICS

## Important Announcement

**Due to Dr. Patterson's busy schedule with his ENT practice, he will be closing Magic Valley Laser Cosmetics and no longer offer cosmetic services.**

**Dr. Patterson wishes to thank all of you that supported him over the years. He will be happy to refer you to other physicians if you require cosmetic services.**

# Magic Valley Laser & Cosmetic

LASER AND COSMETIC SURGERY

**EXHIBIT**

E
_____

tabbies®

## Breast Augmentation

- HOME
- MEET DR. PATTERSON
- PHOTOS
- TESTIMONIALS
- CONTACT US
- FACE LIFT
- MAGIC VALLEY ENT SERVICES
- NEW! DERMAPEN
- EYELIDS AND BROW LIFT
- RHINOPLASTY (NOSE)
- OTOPLASTY (EARS)
- FAT TRANSFER
- CUTERA TITAN LASER FACELIFT
- PELLEVE WRINKLE REDUCTION
- LASER GENESIS/HAIR REMOVAL
- LIMELIGHT PHOTOFACIAL
- TUMMY TUCK AND ARM LIFT
- BOTOX, DYSPORT & PEELS
- SMART LIPO LASER LIPOSUCTION
- GUESTBOOK
- DOCUMENTS
- BLOG



### Confidence is Beautiful

It's time to get educated about breast augmentation!

Learning about the breast augmentation procedure is the first step on your journey to a beautiful new you. In this section, you will explore examples of breast augmentation surgeries, read about the process, and consider your cost and financing options.

Sign In or Register

## Testimonials

"Dr. Patterson did a great job on my laser treatment. He had cream to help ease the dyscomfort and I am pleased with the results. Thanks!"

Mark
Laser

"This is my first time doing any kind of cosmetic procedure. I had a fat transfer from my stomach and love handles to my breasts. Dr. Patterson took lots of time to explain and..."

 Lavamist
Happy Mom of 6

Read more testimonials...

## Newest Members

 

## Recent Blog Entries

Botox, Is it Safe?
by Dr. Temp Patterson | 0 comments

## How Breast Augmentation is Performed

Individual factors and personal preferences will help you and your plastic surgeon to determine your appropriate breast size, the location of incisions, and whether the implants will be placed on top of or underneath the chest muscle.

### Breast Implant Options for the 21st Century

Breast augmentation is designed to increase the size of small or underdeveloped breasts. Breast surgery can also restore and enhance your breast volume if it has decreased as a result of pregnancy and breast feeding. In addition, breast implants can serve one or more of a number of purposes; breast cancer victims can use breast implants for reconstructive purposes after mastectomy, or women with asymmetrical breasts may use a single breast implant to balance the difference in size.

The availability of FDA-approved silicone gel implants will create new options for women considering breast surgery for the first time and for those who have had previous surgeries but are seeking new replacements or revision. Now, all women over 22 years old seeking cosmetic breast augmentation and women seeking breast reconstruction surgery will be able to select silicone breast implants.

### What type of breast implants can be used for breast augmentation?



# Botox, Is it Safe?

Posted by **Dr. Temp Patterson** on July 23, 2013 at 5:40 PM  **comments (0)**

America has a love/hate relationship with Botox. It's the blockbuster drug that millions use regularly. It reduces wrinkles in the upper half of the face and has a growing list of uses that are not related to cosmetic appearance. But there are some definite risks with its use, and it's been implicated in some dark controversies, black market purchases and even deaths. On today's show, you saw me discussing the issues associated with Botox use. In this blog, let's go a little further and explore the safety issues with Botox.

Botox is a powerful drug that knocks off the connection between the nerves and muscles. While we refer to this neurotoxin as "Botox," there are actually several companies that make nearly identical products. Like it or not, it's similar to how "Kleenex" became the term for all paper tissues. So we'll lump Dysport and Xeomin, the other products, together and refer to all these drugs as "Botox."

Botox is a revolutionary drug, and is so effective that it can reduce even deep wrinkles. The longer patients use it, the better they look, as the body actually "heals in" wrinkles when they are not continually recreated. Botox takes less than 15 minutes to inject and typically lasts four months. This powerhouse drug can improve appearance and restore confidence. I love Botox and so do my patients.

While you may see advertisements for Botox in salons, spas and maybe a party or two, Botox is a real medical procedure, with the potential to cause serious problems. In trained hands, Botox problems are usually minor things like bruising or the occasional asymmetric eyebrow. Most of the bigger problems have resulted from injections of large amounts in the neck. This toxin can travel to the muscles that control swallowing and coughing and aspiration of food and pneumonia can result. These complications are rare, but they do underscore the fact that getting Botox is not like getting a facial or a massage. It is a medical procedure that should be performed in a medical office, a heavily regulated environment designed to assure patient safety and privacy.

The bottom line is that Botox is has a low risk profile when used in low doses, such as in facial wrinkles. The higher the dose, the more the risk. Botox is a great way to look younger and feel better in a hurry.