# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUZETTE BAKER; CAMILLE ADAMS; DONJUA MOSELEY; JENALI GRAHAM; CHERYL STONE; GLORIA PRIETO; FALLON MATTHEWS; PENNY DALTON; CHARISSE STEVENSON; KODI TWISS; TRINA SMITH; DORETTA LOPEZ; ELIZABETH CARDINET; CRISTINA MASCCORRO; CARLA WEAVER; and HEIDI SKAGGS, Plaintiffs, vs. TEMP R. PATTERSON, M.D.; TEMP R. PATTERSON, M.D., P.A.; AMBULATORY SURGERY CENTER OF BURLEY, L.L.C.; JOSEPH R. PETERSEN, M.D., and JOHN DOES 1 THROUGH 10, Defendants. | No. 4:16-CV-00181-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING MOTIONS TO DISMISS AND TO STAY** |

### TABLE OF CONTENTS

*I.*   *THE MOTION TO STAY* ................................................................ *3*

*II.*  *THE MOTIONS TO DISMISS* .......................................................... *7*
    *A.*   *The Sufficiency Of The Pleading Of The RICO Claims* .................... *7*
    *B.*   *Leave To Amend* ............................................................................ *13*

*III.* *CONCLUSION* ............................................................................. *14*

This action, involving civil claims pursuant to the federal Racketeering Influenced and Corrupt Organization Act (RICO), and various state law claims, arises from a doctor's alleged importation and use of Chinese manufactured counterfeit Botox and Chinese manufactured breast implants, which were not approved by the Federal Drug Administration (FDA), on various patients of the doctor's practice in Burley, Idaho.  Two of the named defendants are the doctor and his professional association (the Patterson Defendants).  Two other named defendants are a surgery center, where the doctor performed his breast implants, and another doctor, who operated that surgery center and leased office space to the doctor (the Petersen Defendants).  This case is now before me on the following motions:  (1) the Patterson Defendants' June 15, 2016, Motion To Dismiss Pursuant To F.R.C.P. 12(b)(1) And 12(b)(6) (docket no. 17); (2) the Petersen Defendants' June 16, 2016, Motion To Dismiss (docket no. 20); and (3) the Patterson Defendants' July 11, 2016, Motion To Stay Civil Proceedings (docket no. 27).[1]  Pursuant to a Stipulation To Stay Proceedings (docket no. 29), filed by the parties on July 18, 2016, briefing on these motions was completed on August 11, 2016.  I find it appropriate to consider these motions on the parties' written submissions, without oral arguments.

---

[1] It appears that this motion was inadvertently "terminated" on the docket, as a result of the Stipulation To Stay Proceedings (docket no. 29), filed July 18, 2016.  That Stipulation did not relate to the Patterson Defendants' Motion To Stay Civil Proceedings, however.  Rather, that Stipulation related only to a stay for other reasons and, specifically, set deadlines for certain briefing on the motions to dismiss then pending.

## I.     THE MOTION TO STAY

Although it is the last motion filed, I will consider, first, the Patterson Defendants' July 11, 2016, Motion To Stay Civil Proceedings (docket no. 27), because it challenges the propriety of further proceedings in this action while individual defendant Temp R. Patterson is under investigation by the FDA, which may result in criminal charges and proceedings.  Patterson argues the FDA's investigation has already involved the confiscation of the breast implants removed from one of the plaintiffs and the execution of a search warrant by six federal agents and additional law enforcement officers at his home and office, resulting in the seizure of records, computers, and other items.  He argues that, under these circumstances, this civil action, involving alleged predicate offenses of mail fraud and wire fraud, should be stayed.  Patterson argues that, in the absence of a stay, he faces the dilemma of asserting his Fifth Amendment right against self-incrimination or adequately defending this action.  The plaintiffs counter that there is, as yet, no criminal indictment against Patterson, so that a criminal prosecution is speculative.  They also argue that this case can be adequately prosecuted and defended on the basis of information available from sources other than Patterson, so that it is appropriate to proceed with their claims in light of Patterson's wrongful conduct toward them.

As the Ninth Circuit Court of Appeals has explained,

> The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir.1989); *Securities & Exchange Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). "In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence." *Dresser*, 628 F.2d at 1374. "Nevertheless, a

> court may decide in its discretion to stay civil proceedings … 'when the interests of justice seem [ ] to require such action.'" *Id*. at 1375 (quoting *United States v. Kordel*, 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 769 n. 27, 25 L.Ed.2d 1 (1970)).
>
> The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made "in light of the particular circumstances and competing interests involved in the case." *Molinaro*, 889 F.2d at 902. This means the decisionmaker should consider "the extent to which the defendant's fifth amendment rights are implicated." *Id*. In addition, the decisionmaker should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Id*. at 903.

*Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995).

In *Keating*, the court rejected the civil defendant's assertion, like Patterson's, here, that a stay was required in light of the potential implication of his Fifth Amendment rights. *Id*. at 326. The court explained:

> A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976).

4

> In deciding whether to proceed with the hearing, the extent to which the defendant's Fifth Amendment rights are implicated is a significant factor for the [civil judge] to consider, but it is only one consideration to be weighed against others. *Molinaro*, 889 F.2d at 902.

*Keating*, 45 F.3d at 326. In that case, the court found that the civil defendant had adequate time to prepare for both proceedings, while the public's interest in speedy resolution of the civil proceedings would have been unnecessarily impaired by a stay, and the civil defendant's due process rights could be adequately protected without a stay. *Id*.

Similarly, in *Molinaro*, in which the court also denied a stay, the court explained that "[t]he case for staying civil proceedings is 'a far weaker one' when '[n]o indictment has been returned[, and] no Fifth Amendment privilege is threatened.'" *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989) (quoting *Securities & Exchange Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)). In *Molinaro*, the court also concluded that the defendant's difficulties in defending the civil suit in light of his Fifth Amendment privilege issues did not outweigh the other interests in proceeding with the civil suit. *Id*.

I reach much the same conclusion, here. No indictment has yet been returned against Patterson, making the case for a stay of these civil proceedings "far weaker." *Id*. The execution of the search warrant certainly suggests that a criminal prosecution is more than "speculative," but a criminal prosecution remains far from certain. Moreover, the possible implication of Patterson's Fifth Amendment rights is only a consideration, not necessarily the determining factor, in whether to stay these proceedings. *Keating*, 45 F.3d at 326. Again, "it [is] permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, [and] it is even permissible for the trier of fact to draw adverse

inferences from the invocation of the Fifth Amendment in a civil proceeding." *Id*. at 325.

Furthermore, because the plaintiffs' health and well-being are potentially at stake, they have an interest in proceeding expeditiously with their claims. *Id*. at 326 (first enumerated factor). While there is some burden on Patterson if the civil case goes forward, because there is a *potential* for parallel criminal proceedings, *id*. (second enumerated factor), adequate steps can be taken at a later date, if necessary, to protect Patterson's due process rights, where this case is still only at the motion to dismiss stage. *Id*. at 326. The convenience of the court in the management of its cases and the efficient use of judicial resources dictate that these civil proceedings should go forward, at least until Patterson's Fifth Amendment rights are more directly implicated. *Id*. (third enumerated factor). Because this is not a civil enforcement action, like the ones in *Keating* and *Molinaro*, I do not find the interests of persons not parties to the civil litigation or the interest of the public in the pending civil litigation to be of any particular weight. *Id*. (fourth and fifth enumerated factors). On balance, the pertinent factors weigh against a stay of the civil proceedings.

Indeed, it is highly unlikely that circumstances would ever warrant a stay of the entire case, where other steps can be taken that would adequately protect Patterson's Fifth Amendment rights. *Cf. Keating*, 45 F.3d at 324 ("The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings."); *id*. at 326 ("[I]t is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding."). For example, it may be appropriate, upon a showing of sufficient potential prejudice, to enter a protective order barring or delaying Patterson's deposition, when and if it is noticed, or a protective order otherwise designed to protect Patterson's Fifth Amendment rights. The circumstances that might warrant such a protective order are not currently before me, however.

Therefore, the Patterson Defendants' July 11, 2016, Motion To Stay Civil Proceedings (docket no. 27) is denied.

## II.     THE MOTIONS TO DISMISS

Because I will not impose a stay, I turn to consideration of the defendants' motions to dismiss.  Both the Patterson Defendants' June 15, 2016, Motion To Dismiss Pursuant To F.R.C.P. 12(b)(1) And 12(b)(6) (docket no. 17) and the Petersen Defendants' June 16, 2016, Motion To Dismiss (docket no. 20) challenge the sufficiency of the pleading of the plaintiffs' RICO claims.[2]  In fact, the Petersen Defendants simply incorporate by reference the Patterson Defendants' challenges to the RICO claims.  The defendants then challenge this court's supplemental jurisdiction over the plaintiffs' state-law claims, if the RICO claims are dismissed.  I find that the dispositive issue on the motions to dismiss is, indeed, the pleading of the RICO claims that are the basis for federal jurisdiction.

### A.     *The Sufficiency Of The Pleading Of The RICO Claims*

The "*Twom-bal*" standard[3] for motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure—that is, what pleadings are sufficient to satisfy

---

[2] In a single RICO count in their Second Amended Complaint, the plaintiffs assert substantive RICO claims pursuant to §§ 1962(a), (b), and (c), as well as a RICO conspiracy claim pursuant to § 1962(d).  In their response to the Patterson Defendants' Motion To Dismiss, however, the plaintiffs abandon their §§ 1962(a) and (b) claims.

[3] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Rule 8—is now relatively well-settled. *See, e.g., Landers v. Quality Comm'ns, Inc.*, 771 F.3d 638, 640-41 (9th Cir. 2014). What is significant, here, is how those standards relate to a RICO claim. What is also significant is that allegations of fraud, as predicate acts under RICO, are subject to the heightened pleading standards of Rule 9(b), not merely a "*Twom-bal*" plausibility standard. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (en banc).

> As the Ninth Circuit Court of Appeals has explained,
>
> > We start with the elements a plaintiff must plead to state a RICO violation. *See Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937. The RICO statute sets out four elements: a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c). In addition, the conduct must be (5) the proximate cause of harm to the victim. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496–97, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). I agree with the defendants that the plaintiffs have not adequately pleaded facts plausibly supporting these elements, but have relied, instead, on conclusory assertions.

The principal deficiency, here, is failure to plead adequately the existence of a RICO enterprise. As the Ninth Circuit Court of Appeals has explained,

> To show the existence of an enterprise under the second element, plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose. *Boyle v. United States*, 556 U.S. 938, 946, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009).

*Eclectic Properties E.*, 751 F.3d at 997. More specifically, still, an "association-in-fact enterprise," under 18 U.S.C. § 1961(4), the kind of "enterprise" at issue in this case,

"does not require any particular organizational structure, separate or otherwise." *Odom*, 486 F.3d at 551. Nevertheless, to allege an "association-in-fact enterprise," the complaint must describe "'a group of persons associated together for a common purpose of engaging in a course of conduct[ ]' . . . [and] must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" *Id*. at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583.

The plaintiffs allege that the "common purpose" was "to profit from the sale of these non-FDA approved products [that is, counterfeit Botox and breast implants] to Plaintiffs and others." Second Amended Complaint at ¶ 113. They have not alleged any facts plausibly suggesting that the Petersen Defendants had or knew of any such purpose, however. *Eclectic Properties E.*, 751 F.3d at 997 (the plaintiff must allege a common purpose of the enterprise). This is so, despite their allegations that the Petersen Defendants "profited from payments received from [the Patterson Defendants] for the use of facilities necessary for the purpose of the enterprise," *id*. at ¶ 115; that "Surgery Center staff not only assisted Defendant Patterson [to] implant the non-FDA approved implants into [individual plaintiffs], but, Surgery Center [s]taff actually removed the non-FDA approved implants from their packaging and provided the implants to Defendant Patterson," *id*. at ¶¶ 61, 68, 80, and 94; and that "[a]t some point, Defendant Petersen and/or his employees or staff became aware that Defendant Patterson was using non-FDA approved products on Defendant Petersen's property," but continued to accept payments from Patterson, *see id*. at ¶¶ 49 and 51.

There is no reasonable inference from the pleadings that there was a "common purpose" of the RICO defendants. From the allegation in ¶ 115 of the Second Amended

9

Complaint, the reasonable inference is that the Petersen Defendants' purpose was to receive rents for office and surgical space from a tenant and fees for use of surgical staff, at least in the absence of any allegations providing a factual basis for the Petersen Defendants' supposed knowledge that the payments came from Patterson's use of any products that were non-FDA approved.  The plaintiffs' allegations of such "knowledge" in ¶¶ 49 and 51 are merely conclusory.  The allegations that Surgery Center staff removed implants from their packaging, as alleged in ¶¶ 61, 68, 80 and 94, are not allegations of—or allegations of a factual basis for any inference of—knowledge that the breast implants were "non-FDA approved."  Apparently recognizing that deficiency, the plaintiffs argue *in their briefing* that the *photos* of the packaging for the breast implants and Botox, which are attached to their Second Amended Complaint as Exhibit A, show "Chinese writing."  The presence of "Chinese writing" on the packaging is not a fact demonstrating why anyone would know that the breast implants and Botox were "non-FDA approved."  Thus, there is no factual basis for an inference that the Petersen Defendants continued to accept payments from Patterson after supposedly gaining the required knowledge, as alleged in ¶¶ 49 and 51, to plausibly suggest that the Petersen Defendants had the "common purpose" of profiting from the sale of non-FDA approved products.

Furthermore, there is no adequate pleading of "an ongoing organization, formal or informal," or "that the various associates function[ed] as a continuing unit." *Odom*, 486 F.3d at 552 (internal quotation marks and citation omitted).  At most, the facts pleaded suggest that Patterson had an occasional buyer-seller relationship with distributors of Chinese made implants and Botox and a landlord-tenant arrangement with the Peterson Defendants.  Patterson's involvement with both distributors and his landlord simply is not enough to establish "that the various associates function[ed] as a continuing unit." *Id*.  Indeed, there are no allegations of facts plausibly suggesting that anyone

but Patterson was aware that any other participants were required to accomplish the supposed "common purpose" of the supposed "enterprise," and no allegation of any "mechanisms" that enabled the members of the enterprise to act as a "unit" to fulfill the supposed "common purpose." *Cf. id.*[4]

I also find that allegations of fraud in the Second Amended Complaint, as predicate acts under RICO, fail to satisfy the heightened pleading standards of Rule 9(b). *See id.* at 553. Specifically,

> Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity. It provides: "In all averments of fraud …, the circumstances constituting fraud … shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir.1986) (internal quotation marks omitted) (quoting *Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir.1977)). "[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* at 1401; *see also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989). While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541,

---

[4] I also very much doubt that the plaintiffs have adequately pleaded "causation" in support of their RICO claims in their Second Amended Complaint, as the defendants contend. I find it unnecessary to address that alleged deficiency, however, because the plaintiffs' failure to plead a RICO enterprise adequately and to plead predicate acts of fraud with the required particularity, as discussed below, are fatal to the plaintiffs' RICO claims.

> 1547 (9th Cir.1994) (en banc) ("We conclude that plaintiffs may aver scienter generally, just as the rule states-that is, simply by saying that scienter existed.").

*Odom*, 486 F.3d at 553-54.

The plaintiffs' arguments for how they have met these requirements in fact demonstrate the deficiency of their pleadings. They argue that they have pleaded the following:

> **The Who**: The Patterson Defendants, the Petersen Defendants and the Doe Defendants.
>
> **The What**: A fraudulent scheme whereby the Patterson Defendants used the internet to import non-FDA approved breast implants and counterfeit Botox from the Doe Defendants that - when used to treat patients in facilities owned and operated by the Petersen Defendants - were misrepresented to patients as being FDA approved breast implants and Botox.
>
> **The When**: Over a period of time extending back at least to 2011.
>
> **The Where**: In offices owned by Defendant Petersen, but leased to the Patterson Defendants, located at 1338 Highland Ave., Ste. C, Burley Idaho and in Defendant Ambulatory Surgery Center of Burley, LLC owned by Defendant Petersen located at 1344 Hiland Ave., Ste. E, Burley, Idaho.
>
> **The How**: Either representing the non-FDA approved breast implants and counterfeit Botox as being FDA approved while knowing it was not or by failing to disclose to patients that the breast implants and Botox they were being provided was in fact non-FDA approved breast implants and/or counterfeit Botox imported from China.

> **An explanation as to why the statements or omissions complained of were false or misleading**: *See supra*, "The How".

Plaintiffs' Memorandum (docket no. 26), 13 (footnotes omitted).  The plaintiffs have pointed to nothing more than general and conclusory allegations, the exact opposite of "particularity," without identifying any particular communication, at any particular time, to any particular plaintiff, let alone that any such communication was by wire or mail or how and when the wires or the mails were used in furtherance of the alleged fraud.  *See Odom*, 486 F.3d at 554 ("[A] wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." (internal quotation marks and citations omitted)).

In short, the plaintiffs' RICO claims must be dismissed for failure to plead them adequately, pursuant to Rules 8, 9(b), and 12(b)(6).

### B.    Leave To Amend

The dismissal of the plaintiffs' RICO claims, as currently pleaded, raises the question of whether the plaintiffs should be granted leave to amend their Complaint to try to overcome the deficiencies.  The Ninth Circuit Court of Appeals "ha[s] repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *accord OSU Student Alliance v. Ray*, 699 F.3d 1053, 1079 (9th Cir. 2012).  "Because plaintiffs might well be able to remedy the deficiencies in the [RICO] claims . . . [they] should be afforded that opportunity."  *OSU Student Alliance*, 699 F.3d at 1079.  Such a course is all the more appropriate, I believe, when the deficiently pleaded claims are the ones on

which federal jurisdiction depends. Also, because I will allow the plaintiffs to attempt to replead their RICO claims, and I do not have jurisdiction over their state law claims unless they do so adequately, I will not address the defendants' arguments that the state law claims are inadequately pleaded.

### III. CONCLUSION

Upon the foregoing,

1. The Patterson Defendants' July 11, 2016, Motion To Stay Civil Proceedings (docket no. 27) is **denied**, but without prejudice to reassertion in the event that circumstances arise that more directly implicate Patterson's Fifth Amendment rights;

2. The Patterson Defendants' June 15, 2016, Motion To Dismiss Pursuant To F.R.C.P. 12(b)(1) And 12(b)(6) (docket no. 17) and the Petersen Defendants' June 16, 2016, Motion To Dismiss (docket no. 20) are both **granted**, but only to the extent that the plaintiffs' RICO claims are dismissed for failure to state claims upon which relief can be granted, and without prejudice to the plaintiffs' attempt to replead those claims; and

3. The plaintiffs shall have **30 days** from the date of this order within which to file an amended complaint attempting to plead their RICO claims adequately.

**IT IS SO ORDERED**.

**DATED** this 28th day of October, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA
VISITING JUDGE