Richard A. Hearn (ISB No. 5574)
A. Bruce Larson (ISB No. 2093)
John B. Ingelstrom (ISB No. 2659)
HEARN & WOOD LLP
P.O.B. 70
155 S. 2nd Avenue
Pocatello, ID 83204
Telephone (208) 497-0405
Fax (208) 932-4380
rick@hwlawpro.com
bruce@hwlawpro.com
jbi@hwlawpro.com

Kenneth L. Pedersen (ISB No. 1436)
Jarom A. Whitehead (ISB No. 6656)
Michael J. Hanby, II (ISB No. 7997)
PEDERSEN & WHITEHEAD
161 5th Ave. S., Suite 301
P.O. Box 2349
Twin Falls, ID  83303-2349
Telephone (208) 734-2552
Fax:  (208) 734-2772
klpedersen@pedersen-law.com
jwhitehead@pedersen-law.com
michael@pedersen-law.com

*Attorneys for the Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUZETTE BAKER, CAMILLE ADAMS, DONJUA MOSELEY, JENALI GRAHAM, CHERYL STONE, GLORIA PRIETO, FALLON MATTHEWS, PENNY DALTON, CHARISSE STEVENSON, KODI TWISS, TRINA SMITH, DORETTA LOPEZ, ELIZABETH CARDINET, CRISTINA MASCCORRO, CARLA WEAVER and HEIDI SKAGGS, <br><br> Plaintiffs, <br><br> vs. | Case No.: 4:16-cv-00181-MWB <br><br> **THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

TEMP R. PATTERSON, M.D., TEMP R.
PATTERSON, M.D., P.A., AMBULATORY
SURGERY CENTER OF BURLEY, LLC,
JOSEPH R. PETERSEN, M.D. and JOHN
DOES, 1 through 10.

     Defendants.

## **INTRODUCTION**

1.    Plaintiffs Suzette Baker ("Baker"), Camille Adams (Adams), Donjua Moseley ("Moseley"), and Jenali Graham ("Graham"), Cheryl Stone ("Stone"), Gloria Prieto ("Prieto"), Fallon Matthews ("Matthews"), Penny Dalton ("Dalton"), Charisse Stevenson ("Stevenson"), Kodi Twiss ("Twiss"), Trina Smith ("Smith"), Doretta Lopez ("Lopez"), Elizabeth Cardinet ("Cardinet"), Cristina Masccorro ("Masccorro"), Carla Weaver ("Weaver") and Heidi Skaggs (collectively "Plaintiffs") have brought Federal and State Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against their former physician, Defendant Temp R. Patterson, M.D. ("Patterson"), his corporate business entity, Defendant Temp R. Patterson, M.D., P.A. (Patterson P.A.), Defendants Ambulatory Surgery Center of Burley, LLC ("Surgery Center"), its owner, Joseph R. Petersen, M.D. ("Petersen") and John Does 1 through 10 alleging that they were engaged in a pattern of racketeering acts consisting of two or more predicate acts of fraud /or mail/wire fraud in violation of 18 U.S.C. §§ 1341, 1343 and two or more incidents of racketeering conduct as defined in Idaho Code §§ 18-7803(2) (theft and counterfeiting) and 18-7803(10) (fraudulent practices, false pretenses, financial transaction card crimes and fraud generally).

2.    More specifically, Plaintiffs allege that Defendants Patterson, Patterson P.A., Petersen and Surgery Center developed a scheme to illegally import from China non-FDA approved and counterfeit medical products into the United States for the common purpose of selling such

imported products to their patients including Plaintiffs by intentionally misrepresenting to and concealing from their patients the source of these illegally imported medical products.

3.    Plaintiffs Suzette Baker ("Baker"), Camille Adams ("Adams"), Cheryl Stone ("Stone") Jenali Graham ('Graham") and Gloria Prieto ("Prieto") (collectively "breast implant Plaintiffs") have also brought Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against the Ambulatory Surgery Center of Burley, LLC ("Surgery Center") and its owner, Joseph R. Petersen, M.D. ("Petersen"), alleging that Defendants Surgery Center and Petersen conspired and joined together with Defendants Patterson and Patterson, P.A. and other John Doe Defendants to engage in a pattern of racketeering acts consisting of two or more predicate acts of fraud or mail/wire fraud in violation of 18 U.S.C. §§ 1341, 1343 and two or more incidents of racketeering conduct as defined in Idaho Code §§ 18-7803(2) (theft and counterfeiting) and 18-7803(10) (fraudulent practices, false pretenses, financial transaction card crimes and fraud generally).

4.    Plaintiffs also allege that, as part of their scheme to defraud Plaintiffs, Defendant Patterson, Defendant Patterson P.A., Defendant Petersen and Defendant Surgery Center agreed that, all breast augmentation surgeries would be performed in the Surgery Center owned by Defendant Petersen with the assistance of nurses and staff employed by the Surgery Center and such breast augmentation surgeries were performed by Defendant Patterson at the Surgery Center with the assistance of nurses and staff employed by the Surgery Center using non-FDA approved breast implants imported from China.

5.    Defendant Patterson, Defendant Patterson P.A., Defendant Petersen and Defendant Surgery Center attempted to conceal from Plaintiffs, State surveyors, the Surgery Center medical director and others the fact that the breast implants being inserted into Plaintiffs were non-FDA

THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 3

approved Chinese manufactured implants by performing all breast implantation surgeries "off the books" and "after hours."

6.      Plaintiffs Suzette Baker ("Baker"), Penny Dalton ("Dalton"), Fallon Matthews ("Matthews"), Elizabeth Cardinet ("Cardinet"), Charisse Stevenson ("Stevenson"), Trina Smith ("Smith"), Kodi Twiss ("Twiss"), Doretta Lopez ("Lopez"), Gloria Prieto ("Prieto"), Cristina Masccorro ("Masccorro"), Carla Weaver ("Weaver") and Heidi Skaggs ("Skaggs") (collectively "Botox Plaintiffs") have also brought Federal and State Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against Defendant Petersen alleging that Petersen joined together with and conspired with Defendants Patterson and Patterson, P.A. to commit a pattern of racketeering acts consisting of two or more predicate acts of fraud /or mail/wire fraud in violation of 18 U.S.C. §§ 1341, 1343 and two or more incidents of racketeering conduct as defined in Idaho Code §§ 18-7803(2) (theft and counterfeiting) and 18-7803(10) (fraudulent practices, false pretenses, financial transaction card crimes and fraud generally).

7.      More specifically, Plaintiffs allege that Defendant Petersen knowingly agreed to allow Defendants Patterson and Patterson P.A. to use office space owned by Defendant Petersen to purchase non-FDA counterfeit Botox from foreign sources, illegally import such counterfeit Botox into the U.S., store such illegally imported Botox on the premises, and sell non-FDA approved counterfeit Botox to patients without either their knowledge or consent.

8.       In addition to claims brought under the federal and State RICO and mail/wire fraud statutes, Plaintiffs have brought State law claims against Defendants Patterson and Patterson, P.A. for fraud in violation of Idaho Code § 18-7803, breach of fiduciary duty, consumer protection in violation of Idaho Code § 48-603, medical malpractice, and intentional battery.

9.      In addition to claims brought under the federal and State RICO and mail/wire fraud statutes, breast implant Plaintiffs have brought State Law claims against Defendants Surgery

Center and Petersen alleging conspiracy to commit fraud in violation of Idaho Code § 18-7803, conspiracy to commit breach of fiduciary duty, conspiracy to violate consumer protection in violation of Idaho Code § 48-603, medical malpractice, and premises liability.

10.    Plaintiffs Penny Dalton ("Dalton"), Fallon Matthews ("Matthews"), Elizabeth Cardinet ("Cardinet"), Charisse Stevenson ("Stevenson"), Trina Smith ("Smith"), Kodi Twiss ("Twiss"), Doretta Lopez ("Lopez"), Cristina Masccorro ("Masccorro"), Carla Weaver ("Weaver") and Heidi Skaggs ("Skaggs") assert **no** claims against Defendants Petersen and Surgery Center.

11.    Plaintiffs Suzette Baker ("Baker") and Gloria Prieto ("Prieto") [1]  only assert claims against Defendants Petersen and Surgery Center arising from their breast augmentation surgeries and do not assert any claims against Defendants Petersen and Surgery Center arising from their treatment with Botox (collectively "Botox Plaintiffs").

12.    Plaintiffs Dalton, Matthews, Cardinet, Stevenson, Smith, Twiss, Lopez, Cristina Masccorro, Weaver, Skaggs, Baker and Prieto (collectively "Botox Plaintiffs") all received counterfeit Botox from Defendants Patterson and Patterson, P.A. and all of the Botox Plaintiffs' claims stated herein arising out of their treatment with counterfeit Botox are to be construed as being solely against Defendants Patterson and Patterson, P.A.

## JURISDICTION

13.     Federal subject matter jurisdiction for the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims brought by Plaintiffs is based on 18 U.S.C.A. § 1964(c) and 28 U.S.C.A. § 1331.

---

[1] Plaintiffs Baker and Prieto received both Botox and breast augmentation, but assert claims against all Defendants solely as to their breast augmentations.

14.     Supplemental federal subject matter jurisdiction for all Plaintiffs' State law claims (State RICO, Consumer Protection, Fraud, Breach of Fiduciary Duty, Intentional Battery, Premises Liability and Medical Malpractice) is based upon 28 U.S.C.A. § 1367(a).

## PARTIES

15.     At all times relevant, Plaintiff Suzette Baker ("Baker") lived in Jerome County, Idaho. On or about April 29, 2014, Defendant Patterson performed bilateral breast augmentation on Plaintiff Baker in the Surgery Center using what he represented to her as being "mammary gel silicone implants, 360 cc each." Defendant Patterson also injected Plaintiff Baker with a substance he represented as being Botox in June of 2015. Baker's medical records obtained from Defendant Patterson are attached as **Exhibit A** to this Complaint.

16.     At all times relevant, Plaintiff Camille Adams ("Adams") lived in Cassia County, Idaho. On or about April 25, 2014, Defendant Patterson performed bilateral breast augmentation on Plaintiff Adams in the Surgery center using what he represented to her as being "mammary gel silicone implants, 420 cc each." Adams' medical records obtained from Defendant Patterson are attached as **Exhibit B** to this Complaint.

17.     At all times relevant, Plaintiff Donjua Moseley ("Moseley") lived in Minidoka County, Idaho. She worked for Defendants Patterson and Patterson P.A. from November, 2012 until November of 2015 at his office in the building owned by Defendant Petersen. Defendant Patterson last injected Plaintiff Moseley with a substance he represented as being Botox in late summer of 2015.

18.     At all times relevant, Plaintiff Jenali Graham ("Graham") lived in Minidoka County, Idaho. On or about April 25, 2014, Defendant Patterson performed bilateral breast augmentation on Plaintiff Graham in the Surgery center using what he represented to her as being "mammary

gel silicone breast implant, 360 cc each." Graham's medical records obtained from Defendant Patterson are attached as **Exhibit C** to this Complaint.

19.    At all relevant times, Plaintiff Cheryl Stone ("Stone") lived in Bingham County, Idaho. Defendant Patterson performed bilateral breast augmentation on Plaintiff Stone in the Surgery Center on February 27, 2015. Stone's medical records obtained from Defendant Patterson are attached as **Exhibit D** to this Complaint.

20.    At all relevant times, Plaintiff Gloria Prieto ("Prieto") lived in Cassia County, Idaho. Defendant Patterson performed bilateral breast augmentation on Prieto in the Surgery Center in November of 2015. Prieto's medical records obtained from Defendant Patterson are attached as **Exhibit E** to this Complaint.

21.    Defendant Patterson injected Prieto with a substance he represented as being Botox in 2015 and 2016.

22.    At all times relevant, Plaintiff Penny Dalton ("Dalton") lived in Minidoka County, Idaho, and was injected by Defendant Patterson with a substance he represented as being Botox in 2015.

23.    At all times relevant, Plaintiff Fallon Matthews ("Matthews") lived in Cassia County, Idaho, and was injected by Defendant Patterson with a substance he represented as being Botox in 2015.

24.    At all times relevant, Plaintiff Elizabeth Cardinet ("Cardinet") lived in Twin Falls County, Idaho, and was injected by Defendant Patterson with a substance he represented as being Botox in 2015.

25.    The substance injected by Defendant Patterson failed to have the expected effect. When Cardinet complained to Defendant Patterson, she was told there was no problem with the "Botox" he claimed he had used.

26.     At all times relevant, Plaintiff Charisse Stevenson ("Stevenson") lived in Southeastern Idaho and was injected by Defendant Patterson with a substance he represented as being Botox in 2015.

27.     The substance injected by Defendant Patterson failed to have the expected effect.

28.     At all times relevant, Plaintiff Kodi Twiss ("Twiss") lived in Minidoka County, Idaho, and was injected by Defendant Patterson with a substance he represented as being Botox in 2015.

29.     At all times relevant, Plaintiff Trina Smith ("Smith") lived in Cassia County, Idaho, and was injected by Defendant Patterson with a substance he represented as being Botox in 2015.

30.     At all times relevant, Plaintiff Doretta Lopez ("Lopez") lived in Minidoka County, Idaho, and was injected by Defendant Patterson with a substance he represented as being Botox in 2015.

31.     At all times relevant, Plaintiff Cristina Masccorro ("Masccorro") lived in Cassia County, Idaho, and was injected by Defendant Patterson with a substance he represented as being Botox in 2015.

32.     At all times relevant, Plaintiff Carla Weaver ("Weaver") lived in Jerome County, Idaho, and was injected by Defendant Patterson with a substance he represented as being Botox in 2015.

33.     At all times relevant, Plaintiff Heidi Skaggs ("Skaggs") lived in Cassia County, Idaho, and was injected by Defendant Patterson with a substance he represented as being Botox in 2014.

34.     At all times relevant, Defendant Temp T. Patterson, M.D. ("Patterson") was and currently still is an Idaho licensed physician with his medical practice located at 1338 Hiland Ave., Suite C in Burley, Idaho. At least since 2010, Defendant Patterson offered both surgical and non-surgical cosmetic services in the Burley area.

35.     Defendant Temp T. Patterson, M.D., P.A. (also d/b/a Magic Valley Laser Cosmetics) is an Idaho professional corporation having an address of 1338 Hiland Ave., Suite C, Burley, Idaho, 83318. Temp T. Patterson, M.D. is listed as its President and Lacy Patterson is listed as its Secretary on the Annual Reports filed with the Idaho Secretary of State in 2013, 2014 and 2015.

36.     Defendant Ambulatory Surgery Center of Burley, LLC is an Idaho limited liability company located at 1344 Hiland Ave, Ste E, in Burley Idaho and Defendant Joseph R. Petersen is its sole member.

37.     Defendants John Doe 1 through 10 are individuals or entities, currently unknown, who knowingly participated in the manufacturing, distributing and illegal importation from China of non-FDA approved medical products into Idaho to be sold to Plaintiffs by Defendants Patterson and Patterson, P.A. either in Defendant Surgery Center or Defendant Patterson's medical office owned by Defendant Petersen.

## FACTUAL ALLEGATIONS

38.     Plaintiffs reallege all previous paragraphs as if set forth fully herein.

39.     Defendant Patterson practiced medicine in Idaho through his incorporated professional association, Defendant Patterson, P.A., under the assumed business name of Magic Valley Laser Cosmetics.

40.      Defendant Patterson and Defendant Patterson, P.A. marketed Defendants cosmetic services business under the assumed business name of Magic Valley Laser Cosmetics.

41.      Magic Valley Laser Cosmetics was located at 1338 Hiland Ave., Suite C in Burley, Idaho.

42.     The medical office at 1338 Hiland Ave., Suite C in Burley, Idaho is owned by Defendant Petersen.

43.    Defendant Ambulatory Surgery Center of Burley, LLC ("Surgery Center") is located at 1344 Hiland Ave, Ste. E. in Burley, Idaho and is owned and operated as a surgery center by Defendant Petersen.

44.    The sole member of the Ambulatory Surgery Center of Burley, LLC, Defendant Petersen, practices orthopedic surgery in an office located at 1344 Hiland Ave, Ste. A, in Burley, Idaho.

45.    From approximately 2001 until his resignation in June of 2016, Peter Doble II, MD (Dr. Doble") was the Medical Director for the Surgery Center.

46.    Since approximately 2001, Defendant Peterson contracted with Dr. Doble to act as the Medical Director for the Surgery Center.

47.    Federal and State regulations require surgery centers desiring to bill third-party payors such as Medicare and Medicaid to comply with regulations and Federal and State surveyors regularly survey surgery centers to ensure they are in compliance with those regulations.

48.    Dr. Doble has been licensed to practice medicine since 1979 and has been Board Certified in Otolaryngology ("ENT") and Utilization Review since 1983.

49.    Dr. Doble has been Board Certified in Plastic Surgery since 1991.

50.    Dr. Doble is a certified surveyor of Surgery Centers for Medicare, Idaho Medicaid and the Accreditation Association of Ambulatory Health Care ("AAAHC").

51.    Because Defendant Patterson's breast augmentation surgeries performed at the Surgery Center as documented in the medical records prepared by Defendant Patterson would not comply with Federal and State regulations, Defendant Peterson and Defendant Patterson devised a scheme to conceal Dr. Patterson's breast augmentation surgeries from both the Surgery Center's Medical Director and the surveyors.

THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 10

52.    To conceal Defendant Patterson's breast augmentation surgeries performed at the Surgery Center from the Medical director of the surgery Center and the Surgery center surveyors, Defendant Patterson and Defendant Peterson agreed that all the breast augmentation surgeries would be performed "after hours" and "off the books" of the Surgery Center.

53.    Upon information and belief, Defendant Petersen leased for a fee the Surgery Center and its nursing staff to Defendant Patterson for ENT surgical procedures

54.    Copies of the medical records for all of Defendant Patterson's ENT surgeries were kept by the Surgery Center and were subject to review by Dr. Doble as the Medical Director and State surveyors.

55.    During all times relevant, Defendant Patterson performed breast augmentation surgeries at the Surgery Center.

56.     Breast augmentation procedures performed by Defendant Patterson at the Surgery Center were treated differently than ENT procedures performed by Defendant Patterson at the Surgery Center.

57.    Defendant Petersen did not lease for a fee the Surgery Center and its nursing staff to Defendant Patterson for breast augmentation surgical procedures.

58.    Defendant Patterson and Defendant Petersen agreed that all breast implant surgeries would be done at the Surgery Center "after hours" and "off the books" of the Surgery Center.

59.    Defendant Patterson's breast implant surgeries were performed "after hours" and "off the books" in an effort to conceal the fact that non-FDA approved Chinese manufactured implants were being inserted.

60.    How Defendant Petersen was compensated for Patterson's "after hours, "off the books" use of the Surgery Center for Defendant Patterson's breast augmentation procedures is currently unknown.

THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 11

61.     Because the breast augmentation surgeries performed by Defendant Patterson were all performed  "off the books" of the Surgery Center, the agreement whereby Defendant Patterson was allowed to operate in the Surgical Center using Surgery Center staff was **not** a leasor/leasee relationship as were  all of Defendant Patterson's ENT surgeries performed in the Surgery Center.

62.     In contrast to the surgical records for Defendant Patterson's ENT surgeries, the Surgery Center kept no records of Defendant Patterson's breast augmentation surgeries.

63.     The Surgery Center's knowing and deliberate failure to keep surgical records for Defendant Patterson's breast augmentation surgeries in the Surgery Center concealed both the fact that Defendant Patterson was performing breast augmentation surgeries at the Surgery Center and the source of the implants being used from both the Surgery Center's Medical Director and State surveyors.

64.     Although Dr. Doble was the Medical Director for the Surgery Center when all of Dr. Patterson's breast augmentation surgeries were performed, Dr. Doble only became aware that Defendant Patterson was performing breast augmentation surgeries at the Surgical Center in June of 2016, well after this lawsuit was filed.

65.     If Dr. Doble had seen the surgical records for any of Plaintiffs, *see* Exhibits A through E, he would have discovered that the surgical records all lacked identifying information as to the implant's manufacturer and lot number for the implant being placed by Defendant Patterson. Such information is routinely provided both to the patient and the breast implant manufacturers to use for tracking purposes.

66.     If the State surveyors had seen the surgical records for any of Plaintiffs, *see* Exhibits A through E, they would have discovered that the surgical records all lacked identifying information as to the implant's manufacturer and the lot number for the implant being placed by

Defendant Patterson. Such information is routinely provided both to the patient and sent to the implant manufacturer to use for tracking purposes.

67.    Absent any identifying information in the medical records as to the implant's manufacturer and the lot number for the implants being placed by Defendant Patterson at the Surgery Center, Plaintiffs have no way of determining what Dr. Patterson actually implanted in their breast at the Surgery Center other than to undergo another surgery to have the implants removed.

68.    The medical records for Plaintiff Baker are attached as **Exhibit A** to the Complaint. Nowhere in those records do the Defendants document the manufacturer of the breast implants used by Defendant Patterson during the "after hours" and "off the books" breast augmentation surgery performed by him at the Surgery Center owned by Defendant Petersen on April 29, 2014.

69.    In the "Plan" section of Plaintiff Baker's preoperative record, Defendant Patterson wrote that he had "answered all her questions" immediately after writing that Plaintiff Baker had "researched implant types, approaches and options."

70.    When answering Plaintiff Baker's questions at his office in April of 2014 about implant types, Defendant Patterson intentionally misled her into believing that the "implant type" he would use as being one of the available FDA approved types of implants.

71.    The medical records for Plaintiff Adams are attached as **Exhibit B** to the Complaint. Nowhere in those records do Defendants document the manufacturer of the breast implants used by Defendant Patterson during the "after hours" and "off the books" breast augmentation surgery performed by him at the Surgery Center owned by Defendant Petersen on April 25, 2014.

72.     In the "Plan" section of Plaintiff Adam's preoperative record, Defendant Patterson wrote that he had "answered all her questions immediately after writing that Plaintiff Adams had "researched implant types, approaches and options."

73.     When answering Plaintiff Adam's questions at his office in April of 2014 about implant types, Defendant Patterson intentionally misled her into believing that the "implant type" he would use as being one of the available FDA approved types of implants.

74.     The medical records for Plaintiff Graham are attached as **Exhibit C** to the Complaint. Nowhere in those records do Defendants document the manufacturer of the breast implants used by Defendant Patterson during the "after hours" and "off the books" breast augmentation surgery performed by him at the Surgery Center owned by Defendant Petersen on April 24, 2015.

75.     Although Graham's records did contain one reference to a Mentor Memory Gel Breast Implant with appropriate identifying information, Defendant Patterson, by way of a letter dated March 10, 2016 signed by his counsel, has claimed that the document referencing a Mentor breast implant was from another patient's chart and admitted that Graham's breast implants were "Chinese made implants." The identity of the alleged Chinese manufacturer of Graham's breast implants was not disclosed in either the letter or her medical records.

76.     In the "Plan" section of Plaintiff Graham's preoperative record, Defendant Patterson wrote that he had "answered all her questions immediately after writing that Plaintiff Graham had "researched implant types, approaches and options."

77.     When answering Plaintiff Graham's questions at his office in April of 2015 about implant types, Defendant Patterson intentionally misled her into believing that the "implant type" he would use as being one of the available FDA approved types of implants.

78.     The medical records for Plaintiff Stone are attached as **Exhibit D** to the Complaint. Nowhere in those records do Defendants document the manufacturer of the breast implants used

by Defendant Patterson during the "after hours" and "off the books" breast augmentation surgery performed by him at the Surgery Center owned by Defendant Petersen on February 27, 2015.

79.    Plaintiff Stone's medical records do not contain any record of her pre-op visit with Defendant Patterson. Based upon the fact that such a record would normally have been kept by any surgeon and the fact that Defendant did keep and produce such a record for each of the other breast implant Plaintiffs, *i.e.*, Plaintiffs Baker, Adams, Graham and Prieto, Plaintiffs reasonably believe and therefore allege that Defendant Patterson removed his pre-op record from Plaintiff Stone's file in order to hide evidence of the fraudulent representations he made to her.

80.    In an email dated March 30, 2015 sent from Defendant Patterson to Plaintiff Stone attached as **Exhibit F**, Defendant Patterson claims to be sending photos of the box label for the 450 cc implants he had placed in Plaintiff Stone back in February of 2015. Attached to Defendant Patterson's email were photos of a box label for 450 cc Mentor MemoryGel Breast Implants.

81.    At the time of Plaintiff Stone's surgery, Plaintiff Moseley worked in the office of Defendant Patterson.

82.    Shortly after Plaintiff Stone's breast augmentation surgery, Defendant Patterson asked Plaintiff Moseley to order a 440 cc implant from Mentor and send the photograph of the box to Plaintiff Stone.

83.    When Plaintiff Moseley contacted Mentor, she learned that Mentor did not produce 440 cc implants, but, did produce 450 cc implants.

84.    Plaintiff Moseley refused to send the implant picture to Plaintiff Stone.

85.    As is shown in Defendant Patterson's operative note for Plaintiff Stone, Defendant Patterson changed his original dictated note from 440 cc to 450 cc.

86.    When Plaintiff Stone's implants were recently removed, they were determined to be Chinese manufactured non-FDA implants like those implants removed from Plaintiffs Baker, Graham and Adams.

87.    The medical records for Plaintiff Prieto are attached as **Exhibit E** to the Complaint. Nowhere in those records do Defendants document the manufacturer of the breast implants used by Defendant Patterson during the "after hours" and "off the books" breast augmentation surgery performed by him at the Surgery Center owned by Defendant Petersen on April 10, 2015.

88.    In the "Plan" section of Plaintiff Prieto's preoperative record, Defendant Patterson wrote that he had "answered all her questions immediately after writing that Plaintiff Prieto had "researched implant types, approaches and options."

89.    When answering Plaintiff Prieto's questions at his office in April of 2015 about implant types, Defendant Patterson intentionally misled her into believing that the "implant type" he would use as being one of the available FDA approved types of implants.

90.    To conceal these breast augmentation surgeries, the Surgery Center omitted any reference to the breast augmentation surgeries on its surgical logs and required Surgical Center staff to "contract" with Defendant Patterson directly for only these off the book surgeries.

91.    In concealing the fact that Defendant Patterson was performing breast augmentation surgery at the Surgery Center "after hours" and "off the books" from both its Medical Director and State surveyors, the Surgery Center is reasonably believed to have violated multiple regulations governing such facilities.

92.    Defendant Petersen's decision to allow Defendant Patterson to perform breast augmentation surgical procedures on the premises of the Surgery Center "after hours" and "off the books" was a deliberate and intentional attempt by Defendant Petersen to conceal these surgeries from both the Medical Director and the State surveyors.

93.     The most plausible explanation for Defendant Petersen's decision to permit Defendant Patterson to do breast augmentation surgeries "after hours" and "off the books" of the Surgery Center is that Defendant Petersen was fully aware of the improprieties and/or illegalities associated with these "off the book" surgeries and wanted to conceal them from his Medical Director and the State surveyors.

94.     From their offices located at 1338 Hiland Ave., Suite C in Burley, Idaho, Defendant Patterson knowingly devised and participated in a scheme to defraud whereby Defendants Patterson and Patterson P.A. would purchase over the internet, import into Idaho. and then sell to customers in Idaho Chinese manufactured non-FDA approved silicone breast implants and counterfeit non-FDA approved Botox with counterfeit Allergan labels.

95.     Pictures of the boxes containing the Chinese breast implants and the counterfeit Botox with counterfeit labels are attached as **Exhibit G** to this Complaint.

96.      As part of their scheme to defraud, Defendant Patterson used false or fraudulent pretenses, representations and promises to conceal the fact that the medication and/or products being sold to Plaintiffs was non-FDA approved medication and/or products Defendants Patterson and Patterson P.A. had imported into Idaho.

97.      When purchasing the medication and products from outside the U.S., marketing the medication and products in Idaho and in selling the medication and products to customers in Idaho, Defendants Patterson and Patterson P.A. used financial transaction cards, the mails and interstate wire facilities to carry out their scheme.

98.     During all times relevant, Defendants Patterson and Patterson P.A. conducted their scheme to defraud out of an office leased from Defendant Petersen.

99.    During all times relevant, Defendant Patterson also conducted his scheme to defraud by performing all his breast augmentation surgery using non-FDA approved silicone breast implants in the Surgery Center owned and operated by Defendant Petersen.

100.    Defendant Petersen and his employees or staff were aware that Defendant Patterson was using non-FDA approved medical products during surgery in the Surgery Center.

101.    Upon information and belief, Defendant Petersen received compensation for the use of his Surgery Center "after hours" and "off the books" by Defendant Patterson to perform breast augmentation surgeries.

102.    Because Defendant Patterson was acting as a physician when he sold the non-FDA approved medication and products he had imported to his patients, including Plaintiffs, Defendant Patterson was in a professional and/or fiduciary relationship with Plaintiffs and his other patients at the time of their purchases.

103.    Because the Surgery Center provides medical care to patients who undergo surgery there, Defendant Peterson and the Surgery Center were in a professional and/or fiduciary relationship with patients, including Plaintiffs, who underwent surgery at the Surgery Center.

104.    Neither the Surgery Center nor Defendant Petersen took any steps to inform Plaintiffs that, at the time of their surgeries, Defendant Petersen and the Surgery Center were not responsible for the care being provided them by Surgery Center staff in the Surgery Center facility.

105.    Defendant Petersen knowingly agreed to allow Defendant Patterson to use his Surgery Center "off the books" and "after hours" to facilitate their scheme to defraud Plaintiffs.

106.    On or about April 29, 2014, Defendant Patterson performed bilateral breast augmentation on Plaintiff Baker in the Surgery Center using what he represented in her medical records as being "mammary gel silicone implants, 360 cc each."

THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 18

107.    In obtaining Plaintiff Baker's consent to perform the breast augmentation in his cosmetic practice on premises owned by Defendant Petersen, Defendant Patterson concealed from Plaintiff Baker the fact that the implants he intended to use in her breast augmentation were non-FDA approved breast implants

108.    Defendant Patterson immediately and without consent exhibited pictures of Plaintiff Baker's breasts before and after the surgery to at least two individuals while Baker was still unconscious from anesthesia, in violation of HIPAA privacy regulations.

109.    Plaintiff Baker met with Defendant Patterson several times following the surgery to try to address concerns about the left breast implant. Rather than address the issue, Defendant Patterson's response was that Plaintiff Baker should be thankful, as her breasts were markedly improved from their "horrible" pre-surgery condition.

110.    Due to Defendant Patterson's negligence during surgery, Plaintiff Baker had a poor result leaving her with both continued ptosis of her breasts and marcromastia.

111.    Defendant Patterson's negligence during surgery and the resulting harm to Plaintiff Baker is independent of the harm caused Plaintiff Baker by Defendant Patterson's use of non-FDA approved implants.

112.    The silicone implants actually used by Defendant Patterson when performing Plaintiff Baker's breast augmentation in the Surgery Center were Chinese manufactured non-FDA approved breast implants.  A picture of the Chinese breast implants removed from Plaintiff Baker are attached as **Exhibit H** to this Complaint.

113.    Surgery Center staff not only assisted Defendant Patterson implant the non-FDA approved implants, but, Surgery Center Staff actually removed the non-FDA approved implants from their packaging and provided the implants to Defendant Patterson.

114.    Based upon information and belief, Plaintiff Baker alleges that Defendant Patterson and the staff of the Surgery Center negligently performed her breast surgery and this negligence is independent of Defendant Patterson's negligence in using non-FDA approved implants.

115.    When Plaintiff Baker discovered that Defendants Patterson and Patterson P.A. had sold her non-FDA approved breast implants manufactured in China, she had them surgically removed.

116.    Plaintiff Baker has scheduled additional surgery for breast reconstruction in August 2016, necessitated by the removal of the implants.

117.    In his offices leased to him by Defendant Petersen, Defendant Patterson also injected Plaintiff Baker with a substance he represented as being Botox in June of 2015.

118.    In obtaining Plaintiff Baker's consent to inject her with what he represented would be Botox, Defendant Patterson concealed the fact that the substance he would be injecting would be Chinese manufactured non-FDA approved counterfeit Botox.

119.    On or about April 25, 2014, Defendant Patterson performed bilateral breast augmentation on Plaintiff Adams in the Surgery Center using what he represented to her as being "mammary gel silicone implants, 420 cc each."

120.    Surgery Center staff not only assisted Defendant Patterson implant the non-FDA approved implants, but, Surgery Center Staff actually removed the non-FDA approved implants from their packaging and provided them to Defendant Patterson.

121.    Based upon information and belief, Plaintiff Adams alleges that Defendant Patterson and the staff of the Surgery Center negligently performed her breast surgery and this negligence is independent of Defendant Patterson's negligence in using non-FDA approved implants.

122.    In obtaining Plaintiff Adam's consent to perform the breast augmentation, Defendant Patterson concealed from her the fact that the implants he intended to use in her breast augmentation were non-FDA approved breast implants.

123.    The silicone implants actually used by Defendant Patterson when performing Plaintiff Adam's breast augmentation were Chinese manufactured non-FDA approved breast implants.  A picture of the Chinese breast implants removed from Plaintiff Adams are attached as **Exhibit I** to this Complaint.

124.    When Plaintiff Adams discovered that Defendants had sold her non-FDA approved breast implants manufactured in China, she made an appointment with another doctor to have them removed.

125.    In his medical office located on property owned by Defendant Petersen, Defendant Patterson injected Plaintiff Moseley with a substance he represented as being Botox in late summer of 2015.

126.    The substance injected into Plaintiff Moseley by Defendant Patterson in late summer of 2015 was a Chinese manufactured non-FDA approved counterfeit Botox.

127.    In obtaining Plaintiff Moseley's consent to inject her with what he represented would be Botox, Defendant Patterson concealed the fact that the substance he would be injecting would be Chinese manufactured non-FDA approved counterfeit Botox.

128.    In his medical office located on property owned by Defendant Petersen, Defendant Patterson injected Plaintiffs Moseley, Dalton, Matthews, Lopez, Cardinet, Stevenson, Twiss, Smith, Prieto, Masccorro and Weaver (collectively Botox Plaintiffs) with a substance he represented as being Botox.

129.    The substance injected into Botox Plaintiffs by Defendant Patterson was a Chinese manufactured non-FDA approved counterfeit Botox.

130.    In obtaining Botox Plaintiffs' consent to inject them with what he represented would be Botox, Defendant Patterson concealed the fact that the substance he would be injecting would be Chinese manufactured non-FDA approved counterfeit Botox.

131.    On or about April 25, 2015, Defendant Patterson performed bilateral breast augmentation on Plaintiff Graham in the Surgery Center using what he represented to her as being "mammary gel silicone breast implant, 360 cc each."

132.    Surgery Center staff not only assisted Defendant Patterson implant the non-FDA approved implants, but, Surgery Center Staff actually removed the non-FDA approved implants from their packaging and provided them to Defendant Patterson.

133.    In obtaining Plaintiff Graham's consent to perform the breast augmentation, Defendant Patterson concealed from her the fact that the implants he intended to use in her breast augmentation were non-FDA approved breast implants.  Plaintiff Graham was allowed to view sample implants at Defendant Patterson's office, and took a photograph of herself holding the size Mentor[2] implant she intended to be implanted.  The photograph of Graham holding the implant is attached as **Exhibit J** to the Complaint.

134.    The silicone implants actually used by Defendant Patterson when performing Plaintiff Graham's breast augmentation were Chinese manufactured non-FDA approved breast implants. A picture of the Chinese breast implants removed from Plaintiff Graham are attached as **Exhibit K** to this Complaint.

135.    Due to Defendant Patterson's and the staff of the Surgery Center's negligence during surgery, Plaintiff Graham had a poor result leaving her with bilateral mal-positioned breast implants, with double bubble syndrome and breast tissue fall out/ptosis.

---

[2] Mentor is an FDA approved surgical aesthetic product supplied by Mentor Worldwide LLC, an American company**.**

136.    Defendant Patterson's negligence during surgery and the resulting harm to Plaintiff Graham is independent of the harm caused Plaintiff Graham by Defendant Patterson's use of non-FDA approved implants.

137.    In November of 2015, Defendant Patterson performed breast augmentation surgery on Plaintiff Prieto at the Surgery Center.

138.    Without her knowledge or consent, Defendant Patterson used non-FDA approved breast implants during her surgery at the Surgery Center that he had secretly imported from outside the U.S.

139.    Due to Defendant Patterson's and the staff of the Surgery Center's negligence during surgery, Plaintiff Prieto had a poor result.

140.    Defendant Patterson's negligence during surgery and the resulting harm to Plaintiff Prieto is independent of the harm caused Plaintiff Prieto by Defendant Patterson's use of non-FDA approved implants.

141.    On or about February 27, 2015, Defendant Patterson performed bilateral breast augmentation on Plaintiff Stone in the Surgery Center inserting what he represented in her medical records as being 450 cc implants after he unsuccessfully attempted to insert 590 cc implants.

142.    During his attempt to implant 590 cc breast implants, Defendant Patterson ruptured one of the implants causing Plaintiff Stone's tissue to come in contact with silicone.

143.    Plaintiff Stone alleges that Defendant Patterson and the staff of the Surgery Center negligently performed her breast surgery and this negligence is independent of Defendant Patterson's negligence in using non-FDA approved implants.

144.    The silicone implants actually used by Defendant Patterson when performing Plaintiff Stone's breast augmentation were Chinese manufactured non-FDA approved breast implants. A

picture of the Chinese breast implants removed from Plaintiff Stone are attached as **Exhibit L** to this Complaint.

145.    After surgery, Defendant Patterson both affirmatively misrepresented to Plaintiff Stone that the implants were Mentor implants and concealed from Plaintiff Stone the fact that the implants he had used in her breast augmentation were non-FDA approved breast implants he had illegally imported into the United States.

146.    Surgery Center staff not only assisted Defendant Patterson implant the non-FDA approved implants into Plaintiff Stone, but, Surgery Center Staff actually removed the non-FDA approved implants from their packaging and provided them to Defendant Patterson for implantation.

147.    Due to Defendant Patterson's and the staff of the Surgery Center's negligence during surgery, Plaintiff Stone had a bad result and will need to have additional surgery.

148.    Because the Chinese silicone breast implants and counterfeit Botox was manufactured outside the U.S. and imported and sold by Defendants in Idaho, neither the breast implants nor the counterfeit Botox used by Defendants to treat Plaintiffs was ever tested by the FDA to assure that they meet the high quality and safety standards of FDA approved silicone breast implants and Botox.

149.    While Plaintiff Moseley worked for Defendants, Defendant paid Plaintiff Moseley a referral fee to market his cosmetic services to her relatives and other acquaintances in the area.

150.    When Plaintiff Moseley discovered that Defendants were selling non-FDA approved medication and products, she stopped referring people to Defendants for cosmetic services.

151.    When Defendant Patterson then asked Plaintiff Moseley to order an FDA-approved Mentor breast implant of a certain size so it could be photographed and added to the medical

THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 24

records of Plaintiff Stone who had received non-FDA approved Chinese implants, Plaintiff

Moseley not only refused, but she resigned.

152.    Stone was unaware that her implants were non-FDA approved implants manufactured

in China until shortly after the filing of the original Complaint in this matter.

153.    As of the date of the filing of this First Amended Complaint, on information and

belief, there may be numerous other women in Idaho who are unaware that Defendant Patterson

injected them with non-FDA approved Botox and/or implanted in them non-FDA approved

breast implants which Defendants had imported from China.

154.    So far, Defendant Patterson has refused to either reveal the identity of the other

women he treated with non-FDA approved medical products in his cosmetic practice or provide

any of the Plaintiffs with information regarding where those non-FDA approved products were

manufactured.

155.    Defendants Patterson and Patterson, P.A.'s use of non-FDA approved medication and

products without the knowledge of their patients and customers was both willful and wanton and

an extreme deviation from reasonable standard of care for physicians and professional

associations in Idaho.

156.    Defendants Patterson and Patterson, P.A.'s continuing refusal to provide his patients

and former patients with information relevant to their health -- whether they were treated with

non-FDA approved medication and products and, if so, where those medications and products

were manufactured – is also an extreme deviation from reasonable standard of care for

physicians and professional associations in Idaho.

## COUNT I
### (Federal and State RICO)

157.    Plaintiffs reallege all previous paragraphs as if set forth fully herein.

158.   As set forth in detail below, Defendants are hereby alleged to be "persons" associated with an "enterprise" "engaged in, or the activities of which affect, interstate or foreign commerce, [who] conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity" as defined in 18 U.S.C.A. § 1961.

159.   As set forth in detail below, Defendants are hereby alleged to be "persons" associated with an "enterprise" which has engaged in at least two (2) incidents of racketeering conduct as defined in Idaho Code § 18-7803.

160.   In addition to these Defendants, the "enterprise" also includes as Defendants John Does 1 through 10.

161.   John Does 1 through 10 includes the foreign manufacturers and distributors, and domestic distributors, if any, of the non-FDA approved foreign manufactured counterfeit Botox and non-FDA approved foreign manufactured breast implants that the Defendants imported into the United States and sold to Plaintiffs in Idaho as well as yet unknown individuals that assisted the Defendants in their fraudulent scheme in the United States.

162.   Defendants involved themselves in the enterprise's affairs "through a pattern of racketeering activities" as defined under 18 U.S.C.A.§ 1961(1)(B) (trafficking in goods bearing counterfeit marks, mail and wire fraud) and as defined under Idaho Code § 19-7803 (theft, counterfeiting and other fraudulent practices).

163.   Defendants committed racketeering activities by committing two or more predicate acts of mail or wire fraud, and trafficking in goods bearing counterfeit marks and/or acts of theft, counterfeiting and other fraudulent practices.

164.   Over a period of time extending back at least to 2011, all Defendants engaged in a continuous pattern of racketeering acts consisting of the importation and selling of non-FDA approved Botox and/or breast implants.

165.    Defendants are reasonably believed to have sold non-FDA approved Botox and/or breast implants to more than 50 individuals including Plaintiffs.

166.    Defendants' purpose at all times was to profit from the sale of these non-FDA approved products to Plaintiffs and others.

167.    Defendants profited from the enterprise through receipt of funds from the defrauded consumers of these non-FDA approved products.

168.    Defendants committed their racketeering acts by intentionally deceiving Plaintiffs and others as to whether the Botox and/or breast implants Defendants were selling were FDA approved.

169.    Defendants only ended their cosmetic practice after learning of this lawsuit by posting an "Important Announcement" attached as **Exhibit M** on the Web Page for Magic Valley Laser Cosmetics.

170.    Defendants violated 18 U.S.C.A. § 1962(a) and Idaho Code § 18-7804(a) when they used or invested funds derived from their pattern of racketeering activities in the operation of the enterprise as defined above.

171.    Defendants violated 18 U.S.C.A. § 1962(b) and Idaho Code § 18-7804(b) when they used or invested funds derived from their pattern of racketeering activities to acquire or maintain an interest or control in the enterprise as defined above.

172.    Defendants violated 18 U.S.C.A. § 1962(c) and Idaho Code § 18-7804(c) when they conducted or participated in the conduct of the enterprise's activities through a pattern of racketeering activities.

173.    Defendants violated 18 U.S.C.A. § 1962(d) and Idaho Code § 18-7804(d) when Defendant Petersen and his staff knowingly agreed to allow Defendant Patterson to use Defendant Surgery Center and its nursing staff to implant non-FDA approved breast implants

illegally imported from China into unsuspecting patients through a pattern of racketeering activities.

174.    Defendants provided Plaintiffs with less expensive non-FDA approved foreign manufactured counterfeit Botox and/or non-FDA approved foreign manufactured breast implants instead of the more expensive FDA approved Botox and/or breast implants that Defendants had promoted and marketed.

175.    Defendants used the mail and telephone or other interstate wire and internet facilities to purchase, market and sell the non-FDA approved foreign manufactured counterfeit Botox and/or non-FDA approved foreign manufactured breast implants as FDA approved Botox and/or breast implants to Plaintiffs and others.

176.    Defendants also used the mail and telephone or other interstate wire and internet facilities to collect payments from patients who had been deceived into believing that the non-FDA approved foreign manufactured counterfeit Botox and/or non-FDA approved foreign manufactured breast implants they were being provided by Defendants' enterprise was FDA approved Botox and/or breast implants.

177.    Defendants deliberately concealed from Plaintiffs and others that the Botox and breast implants they were promoting, marketing and selling were non-FDA approved foreign manufactured counterfeit Botox and/or non-FDA approved foreign manufactured breast implants.

178.    Internet postings for Defendants doing business as Magic Valley Laser Cosmetics are attached as **Exhibit N** to this Complaint.

179.    Defendants had a duty to inform Plaintiffs and others that the Botox and breast implants being promoted, marketed and sold by Defendants were non-FDA approved foreign

manufactured counterfeit Botox and/or non-FDA approved foreign manufactured breast implants.

180.    Defendants fraudulently misrepresented the Botox and breast implants being sold were bona fide FDA approved products.

181.    Defendants' material fraudulent misrepresentations and omissions about the Botox and breast implants were made by Defendants with the intent of deceiving Plaintiffs and others for the purpose of inducing Plaintiffs and others to act upon them.

182.    In obtaining consent for Plaintiff Baker's breast augmentation in April of 2015, Defendant Patterson misrepresented to her that the implants she was purchasing were FDA approved Mentor manufactured implants while concealing from her that they were non-FDA approved Chines implants.

183.    In obtaining consent for Plaintiff Baker's Botox injections in June of 2015, Defendant Patterson misrepresented to her that the Botox she was purchasing was FDA approved Allergan manufactured Botox.

184.    In obtaining consent for Plaintiff Adam's breast augmentation in April of 2015, Defendant Patterson misrepresented to her that the implants she was purchasing were FDA approved Mentor manufactured implants while concealing from her that they were non-FDA approved Chines implants.

185.    In obtaining consent for Plaintiff Moseley's Botox injections in summer of 2015, Defendant Patterson misrepresented to her that the Botox she was purchasing was FDA approved Allergan manufactured Botox.

186.    In obtaining consent for all Botox Plaintiffs Botox, Defendant Patterson misrepresented to them that the Botox they were purchasing was FDA approved Allergan manufactured Botox.

187.   In obtaining consent for Plaintiff Graham's breast augmentation in April of 2015, Defendant Patterson misrepresented to her that the implants she was purchasing were FDA approved Mentor manufactured implants while concealing from her that they were non-FDA approved Chines implants.

188.   In obtaining consent for Plaintiff Stone's breast augmentation in April of 2015, Defendant Patterson misrepresented to her that the implants she had purchased were FDA approved Mentor manufactured implants while concealing from her that they were non-FDA approved Chines implants.

189.   In obtaining consent for Plaintiff Prieto's breast augmentation in November of 2015, Defendant Patterson misrepresented to her that the implants she was purchasing were FDA approved Mentor manufactured implants while concealing from her that they were non-FDA approved Chines implants.

190.   The counterfeit Allergan labels are shown in **Exhibit O** of the Complaint.

191.   Plaintiffs all justifiably relied upon Defendants' representations concerning the Botox and breast implants they were purchasing.

192.   Plaintiffs and others justifiably relied upon Defendants' misrepresentations and/or omissions concerning the quality of the Botox and/or breast implants they purchased from Defendants.

193.   Plaintiffs all suffered pecuniary loss as a result of Defendants' fraudulent conduct.

194.   Plaintiffs suffered pecuniary losses when they paid Defendants for non-FDA approved foreign manufactured Botox and/or breast implants.

195.   Breast implant Plaintiffs either have suffered or will suffer pecuniary losses when they paid or will pay other doctors to surgically remove the non-FDA approved foreign manufactured breast implants Defendants sold them.

196.    Plaintiffs will all suffer additional pecuniary losses in the future when they undergo medical monitoring of their health to detect and hopefully treat any health consequences of the non-FDA approved foreign manufactured Botox and breast implants.

## COUNT II
### (State Fraud)

197.    Plaintiffs reallege all previous paragraphs as if set forth fully herein.

198.    Plaintiffs allege that Defendants committed the torts of actual and constructive fraud when Defendant Patterson and Patterson, P.A. deliberately concealed from them that they were selling them non-FDA approved foreign manufactured Botox and breast implants.

199.    As described above, Defendants Petersen and Surgery Center committed actual and constructive fraud by knowingly agreeing to allow Defendant Patterson to use the Surgery Center "after hours" and "off the books" as part of the fraudulent scheme to import and market non-FDA approved breast implants to their patients.

200.    In reliance upon Defendant Patterson's misrepresentations or purposeful omissions, Plaintiffs allowed Defendant Patterson to inject non-FDA approved Botox and/or implant non-FDA approved breast implants into their bodies.

201.    Defendant Patterson and Patterson, P.A. misrepresented that the Botox and breast implants were FDA approved when Defendants intentionally concealed from Plaintiffs the material fact that the Botox and breast implants they were being provided were non-FDA approved.

202.    The Botox and breast implants Plaintiffs were being provided was in fact not FDA approved.

203.    Whether the Botox and breast implants were FDA approved was material.

204.    Defendants knew that the Botox and breast implants Plaintiffs were being provided were in fact not FDA approved.

205.    Defendants intended for Plaintiffs to rely upon the false representations about the Botox and breast implants.

206.    Plaintiffs were unaware that the Botox and breast implants were non-FDA approved.

207.    Plaintiffs relied upon their belief that the Botox and breast implants were FDA approved.

208.    Plaintiffs' reliance on Defendants Patterson and Patterson P.A.'s representations about the Botox and breast implants was justifiable.

209.    Plaintiffs suffered economic, mental and physical injury as a result of Defendants' intentional misrepresentations.

210.    Defendants conduct was an extreme deviation from reasonable standards of care for doctors and medical practices in Idaho and was done by Defendants Patterson and Patterson, P.A. in a willful and wanton manner and such conduct was approved or ratified by Defendants Petersen and Petersen, P.A.

## COUNT III
### (State Breach of Fiduciary Duty)

211.    Plaintiffs reallege all previous paragraphs as if set forth fully herein.

212.    A fiduciary duty attached to each Plaintiff at the time Defendants Patterson, Patterson, P.A., Petersen and the Surgery Center undertook to treat them.

213.    The fiduciary relationship between the parties granted all Plaintiffs the right to rely on the Defendants' knowledge and skill.

214.    Plaintiffs placed their trust in Defendants, rightfully assuming that Defendants placed the interests and well-being of each of them above their own interests.

215.    Defendants breached their fiduciary duty by placing their interests above the Plaintiffs' interests when they knowingly participated in the surgical inserting and/or injection of counterfeit non-FDA approved medication and non-FDA approved foreign manufactured medical devices into each of them, all the while leading Plaintiffs to believe such devices were genuine FDA approved.

216.    Defendants Patterson and Patterson, P.A. breached their duty to provide Plaintiffs with undivided loyalty and protection against third-party interference with their physician-patient relationship.

217.    Defendants Petersen and Surgery Center breached their duty to provide Plaintiffs with undivided loyalty and protection against third-party interference with their relationship of trust.

218.    Defendants breached those duties by colluding with a company to obtain counterfeit or non-FDA approved foreign manufactured items to pass off as genuine FDA approved medical devices for the enrichment of both Defendants and the company.

219.    Defendants were and still are bound by a fiduciary duty to disclose all information regarding the treatment to be provided to the Plaintiffs.

220.    Defendants breached that duty by concealing information that counterfeit or non-FDA approved foreign manufactured items were being inserted/injected into Plaintiffs without their knowledge, rather than FDA approved items.

221.    Defendants were bound by a fiduciary duty to provide a level of care that met the accepted standards of doctors, surgery centers and medical practices in Idaho.

222.    Defendants failed to provide such care by intentional acts of surgically inserting and/or injecting counterfeit or non-FDA approved foreign manufactured items into Plaintiffs without their knowledge.

223.    Defendants, prior to treating Plaintiffs, agreed to embark upon a scheme to obtain non-FDA approved breast implants and Botox, with the intent to pass them off as genuine FDA-approved items.

224.    By this scheme, Defendants placed their own economic interests above the health and safety of prospective patients, and Plaintiffs specifically in this case.

225.    These prior actions are retroactively subject to the strict scrutiny of the fiduciary standard.

**COUNT IV**
**(Idaho Consumer Protection Act)**

226.    Plaintiffs reallege all previous paragraphs as if set forth fully herein.

227.    Plaintiffs purchased both goods and services from Defendants Patterson and Patterson, P.A.

228.    Defendants Petersen and Surgery Center knowingly agreed to facilitate the sale and implantation/injection of non-FDA approved medical products to unsuspecting patients.

229.    Breast implant Plaintiffs purchased the following goods from Defendants Patterson and Patterson, P.A.: Breast implants.

230.    Botox Plaintiffs purchased the following goods from Defendants Patterson and Patterson, P.A.: A substance represented to be Botox®, the registered trademark of onabotulinumtoxinA, manufactured and marketed by Allergan.

231.    Botox Plaintiffs purchased the following services from Defendants Patterson and Patterson, P.A.: Botox injections.

232.    Breast implant Plaintiffs purchased the following services from Defendants Patterson and Patterson, P.A.: Breast augmentation surgery.

233.   In selling goods and services to Plaintiffs, Defendants Patterson and Patterson, P.A., acted unlawfully in violation of Idaho Code § 48-603.

234.   All Plaintiffs purchased at least one good and one service from Defendants.

235.   In failing to notify Plaintiffs that the goods being sold them by Defendants were not FDA approved, Defendants violated Idaho Code § 48-603(2) (approval of goods).

236.   In failing to notify Botox Plaintiffs that the substance represented to them to be Botox being provided them by Defendants was not manufactured by Allergan, Defendants violated Idaho Code § 48-603(3) (association with another).

237.   In failing to notify breast implant Plaintiffs that the implants being sold them by Defendants was not manufactured by Mentor or any other FDA approved manufacturer, Defendants violated Idaho Code § 48-603(3) (association with another).

238.   In failing to notify Plaintiffs that the goods (Botox and Implants) being sold them by Defendants were purchased by the Defendants from sources located outside the U.S., Defendants violated Idaho Code § 48-603(4) (deceptive representations of geographic origin in connection with goods).

239.   In failing to notify Plaintiffs that the goods being sold them by Defendants were not FDA approved, Defendants violated Idaho Code § 48-603(5) (representing that goods and services have characteristics that they do not have).

240.    In failing to notify Plaintiffs that the services being provided them by Defendant Patterson included placing non FDA approved goods into their bodies without their consent, Defendants violated Idaho Code § 48-603(5) (representing that goods and services have characteristics that they do not have).

241.    In failing to notify Plaintiffs that the goods being sold them by Defendants were not FDA approved, Defendants violated Idaho Code § 48-603(7) (representing that goods are of a particular standard, quality or grade when they are of another).

242.    In advertising the goods and services marketed to Plaintiffs by Defendants, Defendants concealed the fact that the goods and services being offered for sell were goods which were not FDA approved and services which involved using non-FDA approved goods. Such advertising by Defendants violated Idaho Code § 48-603(9) (advertising goods and services with intent not to sell them as advertised).

243.    In obtaining informed consent to treat Plaintiffs with Botox and/or surgically implant breast implants, Defendants violated Idaho Code § 48-603(17) (deceit) by intentionally misleading and/or deceiving Plaintiffs as to the nature of what they were being asked to consent to.

244.    In injecting Plaintiffs with non-FDA approved Botox and/or in implanting into Plaintiffs non-FDA approved breast implants, Defendants violated Idaho Code § 48-603(18) (unconscionability) by employing unconscionable methods, acts or practices.

245.    Unbeknownst to his patients, Defendant Patterson used the non-FDA approved medications and products when providing services to patients other than Plaintiffs. Defendants Patterson's and Patterson P.A.'s violations of Idaho Code § 48-603 were therefore both "repeated" and "flagrant" as those terms are used in Idaho Code § 46-608(1).

## COUNT V
### (State Medical Malpractice)

246.    Plaintiffs reallege all previous paragraphs as if set forth fully herein.

247.    Breast Implant Plaintiffs filed a Prelitigation Hearing Request for their malpractice claims against Defendants Petersen and Surgery Center with the Idaho State Board of Medicine on May 16, 2016.

## PLAINTIFF BAKER

248.    Plaintiff Baker timely filed a Prelitigation Hearing Request for her malpractice claims against Defendant Patterson with the Idaho State Board of Medicine on or about December 29, 2015.

249.    Defendant Patterson and Plaintiff Baker, through counsel, stipulated to waive the Prelitigation Hearing previously scheduled for March 7, 2016 and, as a result, the hearing request was withdrawn.

250.    On or about April 29, 2014, Defendant Patterson performed on Plaintiff Baker a "bilateral augmentation mammoplasty, subglandular with a mammary gel silicone breast implant."

251.    In obtaining consent for the augmentation mammoplasty, Defendant Patterson deliberately concealed from Plaintiff Baker that he would be implanting non-FDA approved Chinese manufactured breast implants.

252.    Before her surgery, Defendant Patterson led Plaintiff Baker to believe that the breast implants he would implant would be FDA approved implants.

253.    After her surgery, Defendant Patterson led Plaintiff Baker to believe that the breast implants he had implanted were FDA approved implants.

254.    Because Defendant Patterson concealed this material fact about Plaintiff Baker's surgery from Plaintiff Baker, Defendant Patterson failed to obtain Plaintiff Baker's informed consent prior to surgery.

255.   In concealing from Plaintiff Baker the fact that Defendant Patterson was intending to implant non-FDA approved breast implants and, in fact, had implanted non-FDA approved implants, Defendant Patterson breached the standard of health care practice for the local area in which he practices.

256.   When Plaintiff Baker discovered that Defendant Patterson had implanted non-FDA approved breast implants into her body, she scheduled an appointment with another surgeon to have the removed.

257.   Plaintiff Baker has had her breast implants surgically removed.

258.   Plaintiff Baker received injections from Defendant Patterson of what Defendant Patterson represented as being Botox. Plaintiff Baker's most recent injections were in June of 2015.

259.   In obtaining consent for the injections, Defendant Patterson deliberately concealed from Plaintiff Baker that he would be injecting non-FDA approved Chinese manufactured counterfeit Botox.

260.   Before her injections, Defendant Patterson led Plaintiff Baker to believe that the Botox he would administer would be FDA approved Botox.

261.   After her injections, Defendant Patterson led Plaintiff Baker to believe that the Botox he had injected was FDA approved Botox.

262.   Because Defendant Patterson concealed this material fact about Plaintiff Baker's injections from Plaintiff Baker, Defendant Patterson failed to obtain Plaintiff Baker's informed consent prior to the injections.

263.   In concealing from Plaintiff Baker the fact that Defendant Patterson was intending to inject non-FDA approved Botox and, in fact, had injected non-FDA approved Botox, Defendant Patterson breached the standard of health care practice for the local area in which he practices.

264.    In addition to and independent of Defendant Patterson's breach of the standard of care in using non-FDA approved Botox and breast implants, Defendant Patterson and Defendant Surgery Center breached the standard of care in performing Plaintiff Baker's surgery and this breach of the standard of care resulted in harm to her.

265.    Defendant Patterson's and Surgery Center's breach of the local standard of health care practice proximately caused physical, emotional and economic injury to Plaintiff Baker.

## PLAINTIFF ADAMS

266.    Plaintiff Adams filed a Prelitigation Hearing Request with the Idaho State Board of Medicine on her malpractice claims against Defendant Patterson on or about February 29, 2016. Defendant Patterson has since waived the hearing.

267.    On or about April 25, 2014, Defendant Patterson performed on Plaintiff Adams a "bilateral augmentation mammoplasty, subglandular with a mammary gel silicone breast implant."

268.    In obtaining consent for the augmentation mammoplasty, Defendant Patterson deliberately concealed from Plaintiff Adams that he would be implanting non-FDA approved Chinese manufactured breast implants.

269.    Before her surgery, Defendant Patterson led Plaintiff Adams to believe that the breast implants he would implant would be FDA approved implants.

270.    After her surgery, Defendant Patterson led Plaintiff Adams to believe that the breast implants he had implanted were FDA approved implants.

271.    Because Defendant Patterson concealed this material fact about Plaintiff Adam's surgery from Plaintiff Adams, Defendant Patterson failed to obtain Plaintiff Adam's informed consent prior to surgery.

272.   In concealing from Plaintiff Adams the fact that Defendant Patterson was intending to implant non-FDA approved breast implants and, in fact, had implanted non-FDA approved implants, Defendant Patterson breached the standard of health care practice for the local area in which he practices.

273.   When Plaintiff Adams discovered that Defendant Patterson had implanted non-FDA approved breast implants into her body, she scheduled an appointment with a surgeon to have them removed as soon as possible.

274.   In addition to and independent of Defendant. Patterson's breach of the standard of care in using non-FDA approved Botox and breast implants, Defendants Patterson and Surgery Center breached the standard of care in performing Plaintiff Adams' surgery and this breach of the standard of care resulted in harm to her.

275.   Defendant Patterson's breach of the local standard of health care practice proximately caused physical, emotional and economic injury to Plaintiff Adams.

## PLAINTIFF MOSELEY

276.   Plaintiff Moseley filed a Prelitigation Hearing Request with the Idaho State Board of Medicine on or about February 26, 2016. Defendant Patterson has since waived the hearing.

277.   Plaintiff Moseley received injections from Defendant Patterson of what Defendant Patterson represented as being Botox. Plaintiff Moseley's most recent injections were in summer of 2015.

278.   In obtaining consent for the injections, Defendant Patterson deliberately concealed from Plaintiff Moseley that he would be injecting non-FDA approved Chinese manufactured counterfeit Botox.

279.    Before her injections, Defendant Patterson led Plaintiff Moseley to believe that the Botox he would administer would be FDA approved Botox.

280.    After her injections, Defendant Patterson led Plaintiff Moseley to believe that the Botox he had injected was FDA approved Botox.

281.    Because Defendant Patterson concealed this material fact about Plaintiff Moseley's injections from Plaintiff Moseley, Defendant Patterson failed to obtain Plaintiff Moseley's informed consent prior to the injections.

282.    In concealing from Plaintiff Moseley the fact that Defendant Patterson was intending to inject non-FDA approved Botox and, in fact, had injected non-FDA approved Botox, Defendant Patterson breached the standard of health care practice for the local area in which he practices.

283.    Defendant Patterson's breach of the local standard of health care practice proximately caused physical, emotional and economic injury to Plaintiff Moseley.

## PLAINTIFF GRAHAM

284.    Plaintiff Graham timely filed a Prelitigation Hearing Request with the Idaho State Board of Medicine on or about March 11, 2016.  Defendant Patterson has since waived the hearing.

285.    On or about April 24, 2015, Defendant Patterson performed on Plaintiff Graham a "bilateral augmentation mammoplasty, submuscular with a mammary gel silicone breast implant."

286.    In obtaining consent for the augmentation mammoplasty, Defendant Patterson deliberately concealed from Plaintiff Graham that he would be implanting non-FDA approved Chinese manufactured breast implants.

287.    Before her surgery, Defendant Patterson led Plaintiff Graham to believe that the breast implants he would implant would be FDA approved implants.

288.    Plaintiff Graham was allowed to view sample implants at Defendant Patterson's office, and took a photograph of herself holding the size Mentor implant she intended to be implanted.  The photograph of Graham holding the sample implant is attached as **Exhibit J** to the Complaint.

289.    After her surgery, Defendant Patterson led Plaintiff Graham to believe that the breast implants he had implanted were FDA approved implants.

290.    Because Defendant Patterson concealed this material fact about Plaintiff Graham's surgery from Plaintiff Graham, Defendant Patterson failed to obtain Plaintiff Graham's informed consent prior to surgery.

291.        In concealing from Plaintiff Graham the fact that Defendant Patterson was intending to implant non-FDA approved breast implants and, in fact, had implanted non-FDA approved implants, Defendant Patterson breached the standard of health care practice for the local area in which he practices.

292.    In addition to and independent of Defendant Patterson's breach of the standard of care in using non-FDA approved Botox and breast implants, Defendants Patterson and Surgery Center breached the standard of care in performing Plaintiff Graham's surgery and his breach of the standard of care resulted in harm to her.

293.    Plaintiff Graham experienced difficulties with the implant in her left breast, including pain and accompanying restriction of range of motion on her left side. In a follow-up with Defendant Patterson, he admitted that he had likely made the incision too low.  Defendant Patterson indicated that he believed it might be necessary to remove the implant and insert another, smaller implant.  Plaintiff Graham decided to wait to see if the discomfort would go

away.  She was unable to resume her regular routines until approximately December 2015 due to the discomfort.

294.   Plaintiff Graham still experiences issues with both implants in that they seem to shift overnight and must be manually readjusted to appear correctly positioned.

295.   Plaintiff Graham has suffered from unexplained rashes since the surgery. Due to a history of allergic reactions to certain substances, she is fearful that the implant may be contaminated or impregnated with foreign substances that are causing the rashes.

296.   In improperly implanting one or both of the breast implants, Defendants Patterson and Surgery Center breached the standard of health care practice for the local area in which he practices.

## PLAINTIFF STONE

297.      Defendants Patterson and Patterson, P.A. agreed to waive the prelitigation hearing on Plaintiff Stone's claims on or about May 12, 2016.

298.      On or about February 27, 2015, 2014, Defendant Patterson performed bilateral breast augmentation on Plaintiff Stone in the Surgery Center inserting what he represented in her medical records as being 450 cc implants after he unsuccessfully attempted to insert 590 cc implants.

299.   During his attempt to implant 590 cc breast implants, Defendant Patterson ruptured one of the implants causing Plaintiff Stone's tissue to come in contact with silicone.

300.   Plaintiff Stone alleges that Defendant Patterson and the staff of the Surgery Center breached the standard of care when performing her breast surgery and this negligence was the cause of her injuries.

THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - 43

301. The silicone implants actually used by Defendant Patterson when performing Plaintiff Stone's breast augmentation were Chinese manufactured non-FDA approved breast implants. The use of non-FDA approved implants also breached the standard of care and caused injury.

302. Plaintiff Stone alleges that Defendant Patterson and the staff of the Surgery Center breached the standard of care by failing to bring her out of sedation and obtain her consent to use different sized implants that were also non-FDA approved. This constituted a breach of the standard of care and caused injury.

303. After surgery, Defendant Patterson concealed from Plaintiff Stone the fact that the implants he had used in her breast augmentation were non-FDA approved breast implants he had illegally imported into the United States.

304. Surgery Center staff not only assisted Defendant Patterson implant the non-FDA approved implants into Plaintiff Stone, but, Surgery Center Staff actually removed the non-FDA approved implants from their packaging and provided them to Defendant Patterson for implantation.

305. Due to Defendant Patterson's and the staff of the Surgery Center's negligence during surgery, Plaintiff Stone had a poor result and will need to have additional surgery.

**PLAINITFF PRIETO**

306. Defendants Patterson and Patterson, P.A. agreed to waive the prelitigation hearing on Plaintiff Prieto's claims on or about May 12, 2016.

307. In November of 1015, Defendant Patterson performed breast augmentation surgery on Plaintiff Prieto at the Surgery Center.

308. Without her knowledge or consent, Defendant Patterson used non-FDA approved breast implants during her surgery at the Surgery Center that he had secretly imported from outside the U.S.

309.   Defendant Patterson's failure to obtain informed consent breached the standard of care and caused injuries to Prieto.

310.   Due to Defendant Patterson's and the staff of the Surgery Center's negligence during surgery, Plaintiff Prieto had a poor result and may need future surgery as a result.

311.   Defendant Patterson's breach of the standard of care during surgery and the resulting harm to Plaintiff Prieto is independent of the harm caused Plaintiff Prieto by Defendant Patterson's use of non-FDA approved implants.

## COUNT VI
### (State Intentional Battery)

312.   Plaintiffs reallege all previous paragraphs as if set forth fully herein.

313.   In obtaining consent from each Plaintiff for the augmentation mammoplasty and/or Botox injection, Defendant Patterson deliberately concealed from Plaintiffs that he would be implanting non-FDA approved Chinese manufactured breast implants or injecting non-FDA approved Botox.

314.   Before each surgery or procedure, Defendant Patterson led Plaintiffs to believe that the breast implants and/or Botox injections were FDA approved.

315.   By concealing the true nature of the breast implants and Botox, Defendant Patterson did not obtain true consent to the procedures performed on the Plaintiffs.

316.   Defendant Patterson knew that his deception nullified any consent given by the Plaintiffs and that his touching was therefore not permitted.

317.   Defendant Patterson's touching of the Plaintiffs without permission was unlawful, harmful and offensive.

## COUNT VII
### (State Premises Liability Claims)

318.   Plaintiffs reallege all previous paragraphs as if set forth fully herein.

319.    Plaintiffs were all invitees of Defendants Patterson, Patterson P.A., Surgery Center and Petersen.

320.    Defendants Patterson, Patterson P.A., Surgery Center as lessees were the occupiers of the premises on which Plaintiffs were invitees.

321.    Defendant Petersen was the owner of the premises on which Plaintiffs were invitees.

322.    As an owner, Defendant Petersen owed a duty to Plaintiffs to exercise ordinary care to avoid exposing persons on the premises to an unreasonable risk of harm.

323.    Defendant Petersen breached that duty when he failed to use ordinary care to avoid exposing patients on his premises to the unreasonable risk associated with the cosmetic practice of Defendants Patterson and Patterson, P.A.

324.    As an owner, Defendant Petersen owed a duty to Plaintiffs to use ordinary care in inspecting both the Surgery Center and the medical office space occupied by Defendant Patterson for the purpose of discovering dangerous conditions on his premises.

325.    Defendant Petersen breached that duty when he failed to use ordinary care to inspect both the Surgery Center and the medical office space occupied by Defendant Patterson for the purpose of discovering dangerous conditions on his premises.

326.    As an owner, Defendant Petersen was deemed to have knowledge of any dangerous conditions on the premises known to Defendant Petersen's employees.

327.    Defendant Petersen breached that duty when he failed to act to protect Plaintiffs from the dangerous conditions existing on his premises based upon knowledge of those dangerous conditions imputed to Defendant Petersen because those dangerous conditions were known to one or more of his employees.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.    Appropriate damages for the injuries and losses suffered by Plaintiffs in accordance

with the proof presented at trial;

B.    For special damages incurred by Plaintiffs, together with their costs and reasonable attorney fees, in accordance with the provisions of Idaho Code §§12-120, 12-121, 18-7805(a), 48-608 and IRCP 54, and §18 USC 1964(c).

C.    For Injunctive Relief against Defendants Patterson and Patterson, P.A. enjoying them from continuing to conceal from Plaintiffs their health information,

D.    For such other and future relief as the Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues.

DATED this 21st day of November, 2016

By: /s/ Richard A. Hearn
RICHARD A. HEARN
HEARN & WOOD LLP